## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| JESSIE GLORIA, LUIS BOTELLO-FAZ, NICOLAS MACRI, PAT GRANT, JENNIFER RAMOS, and ISAIAH RODRIGUEZ, <br><br>            Plaintiffs, <br>    v. <br><br> RUTH HUGHS, in her official capacity as Texas Secretary of State <br><br>            Defendant. | Case No. __**5:20-cv-00527**__ <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> Related to *Texas Democratic Party et al. v. Abbott et al.*, No. 5:20-cv-00438-FB |

Plaintiffs JESSIE GLORIA, LUIS BOTELLO-FAZ, NICOLAS MACRI, PAT GRANT, JENNIFER RAMOS, and ISAIAH RODRIGUEZ, by and through their undersigned counsel, file this COMPLAINT for DECLARATORY and INJUNCTIVE RELIEF against Defendants RUTH HUGHS, in her official capacity as Texas Secretary of State, and allege as follows:

### NATURE OF THE CASE

1.      In Texas, any voter 65 years old or older is eligible to request and cast their ballot by mail in the State's elections. Tex. Elec. Code §§ 82.003 (the "Absentee Ballot Age Restriction"). All voters under 65, however, are broadly and categorically prohibited from doing the same, unless they will be absent from the county where they are registered to vote for the entirety of election day, *id*. § 82.001, are confined in jail but otherwise eligible to vote, *id*. § 82.004, have a sickness or physical condition preventing them from appearing to vote in person without a likelihood of needing personal assistance or injuring their health, *id*. § 82.002(a), or are "expected or likely confine[d]" for childbirth, *id*. § 82.002(b). As a result, the vast majority of Texans are prohibited from voting by mail, for no other reason than they have not yet had their 65th birthday.

2.      The decision to parse out voting rights "on account of age" is one which the Twenty-Sixth Amendment to the U.S. Constitution prohibits a state from making. *See* U.S. CONST., amend. XXVI, § 1 ("The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged . . . by any State on account of age"). Thus, the Absentee Ballot Age Restriction, which prohibits the majority of Texas's voters from voting by mail on account of their age, violates the text of that constitutional provision on its face. Having opted to make mail in voting an option for voters in Texas, Defendants may not constitutionally choose to restrict access to the franchise to voters for no other reason than the fact that they are 18 years old, 25 years old, or 64-and-a-half years old. Period.

3.      While the Absentee Ballot Age Restriction would be unconstitutional under any event, in the current circumstances, its application is unconscionable. As a global pandemic unprecedented in our times infects thousands more Texans daily and shows few signs of abating, the Absentee Ballot Age Restriction is highly likely to operate in the coming July 2020 primary runoff and November general election to force millions of voters into an untenable position, choosing whether to forego their most fundamental right or having no choice but to vote in person, at what are likely to be understaffed and overcrowded polling places, putting their own health at risk, and needlessly exacerbating the spread of the virus.

4.      The recent state court decision in *Texas Democratic Party v. DeBeauvoir*, D-1-GN-20-001610, which interpreted the Texas Election Code to require voters who "reasonably believe they may be at risk to contract COVID-19" to vote by mail pursuant to the "disability" exception found in Tex. Elec. Code § 82.002, does not make this case any less urgent. The Plaintiffs who bring this action are all Texans between the ages of 18 and 28 years of age and it is not at all clear that they would qualify for this exception, even if it withstands attack on appeal. Shortly after the

opinion was issued, the State indicated not only its intention to do just that, but also that it believes its appeal automatically supersedes the order. Moreover, there have been multiple press reports that the Texas Attorney General has issued a letter opinion threatening voters and voting rights groups with felony charges if they request mail-in ballots due to fears of the COVID-19 pandemic.

5.      In other words, Texas has created a system where a substantial majority of the electorate are barred from mail voting due to nothing other than their chronological age, a system that voters must now attempt to navigate under serious threats to their health, to the health of their loved ones, and even of criminal prosecution. To be sure, some number of Texans will need to vote in person in these coming elections, even if mail voting is widely available. But, foreclosing this option to millions of members of the electorate simply on account of their age is facially unconstitutional. Moreover, if enforced in these coming elections, the Absentee Ballot Age Restriction will needlessly exacerbate the current public health crisis. For all the reasons set forth herein, the Court should issue declaratory and injunctive relief prohibiting Texas from selectively discriminating against voters on account of age.

## JURISDICTION AND VENUE

6.      Plaintiffs sue under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

7.      This Court has original jurisdiction over the subject of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

8.      This Court has personal jurisdiction over the Defendant, the Secretary of State Ruth Hughs, who is sued in her official capacity only.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that caused Plaintiffs' claims occurred in this judicial district.

10.     This Court has the authority to enter a declaratory judgment and to provide injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11.     Plaintiff JESSIE GLORIA is a resident of and registered voter in the State of Texas. Ms. Gloria is 23 years old and lives in San Antonio, where she plans on living for the foreseeable future. She works as a digital organizer. Ms. Gloria has been registered to vote in San Antonio since she was old enough to be eligible and has always voted in person. In light of the COVID-19 pandemic, voting in person is impossible because Ms. Gloria is autoimmune-compromised after being diagnosed with lupus at age 15. She is the sole provider for her family, and she will not take any risks that will harm her health and the health of her loved ones. Thus, if Ms. Gloria is prohibited from voting in person as a result of the Absentee Ballot Age Restriction, the result will be her complete and total disenfranchisement.

12.     Plaintiff LUIS BOTELLO-FAZ is a resident of and registered voter in the State of Texas. Mr. Botello-Faz is a 25-year-old resident of Helotes, a suburb of San Antonio, where he has lived since 2012. He is originally from Mexico and became a U.S. citizen in 2011. Voting is very important to him and he has devoted the last few years to political engagement and campaigns. He has worked as a field director for local and national candidates, managed phone banks, canvassed, and planned get-out-to-vote efforts. Mr. Botello-Faz has always voted in person since he registered to vote in 2014. In light of the ongoing COVID-19 pandemic, Mr. Botello-Faz faces a difficult decision as to whether he will vote and risk his health or not vote and remain in safety.

Given this choice, he would take every precaution and vote, but it is a choice that he would rather not make. He does not believe that he would qualify for voting under the "disability" exception as construed by the state court in *DeBeauvoir*; and, he is concerned that if he applied to vote by mail under that exception, he may be subject to prosecution as a result of the threats that have been made by the Texas Attorney General regarding voters who seek to use that exception due to fears about COVID-19.

13.    Plaintiff NICOLÁS MACRI is a resident of and registered voter in the State of Texas. Mr. Macri is currently a high school senior in College Station, Texas, scheduled to graduate in May 2020. Mr. Macri has been interested in politics and issues of voting rights and democracy since middle school and served as an election worker in Brazos County during the November 2018, November 2019, and March 2020 elections. Mr. Macri turned 18 in October 2019 and promptly registered to vote. He has since voted in person for all three elections for which he has been eligible, including the November 2019 local election, a special election for city council in January 2020, and the March 2020 presidential primary election, voting on either election day or during the early voting period. Mr. Macri would strongly prefer to early vote by mail in the upcoming July 14 primary runoff election in Texas but is currently prohibited from doing so due to Texas's Absentee Ballot Age Restriction. Given the ongoing COVID-19 pandemic, Mr. Macri does not feel comfortable voting in person in the July 14 primary election and risking his health and the health of his family, including his parents, with whom he currently resides. If Texas's Absentee Ballot Age Restriction forces Mr. Macri to choose between risking his health and the health of his loved ones to vote in person in the upcoming July 14 primary runoff or being disenfranchised, Mr. Macri will not vote.

14.     Plaintiff PAT GRANT is a resident of and registered voter in the State of Texas. Mr. Grant is 23 years old and lives in Houston, plans to remain there through at least November 2020. He works for a political action committee and is committed to increasing voter turnout through registering voters, phone-banking, and getting out the vote in the 2020 elections and beyond. Since moving to Houston in 2019, Mr. Grant has voted in person, but, in light of the COVID-19 pandemic he has some trepidations with doing so in the future. Mr. Grant does not want to jeopardize his health to do his civic duty and would strongly prefer to vote by mail in the coming elections; but, because he is passionate about the right to vote, if he has no other choice he will likely vote in person wearing a mask, practicing social distancing, and self-quarantining for days after voting. Mr. Grant is concerned that relying on the recent state court decision in Texas, *DeBeauvoir,* to vote by mail might make him subject to prosecution as a result of the Texas Attorney General's threats toward voters who request mail-in ballots due to COVID-19 fears.

15.     Plaintiff JENNIFER RAMOS is a resident of and registered voter in the State of Texas. Ms. Ramos is a 28-year-old living in Austin, Texas. She works remotely as a senior associate at a digital marketing firm based in New York. Ms. Ramos has had extensive political involvement including work with the Austin Young Democrats and the Texas Young Democrats. She has been a delegate to the Texas Democratic Convention since 2012. Ms. Ramos has voted in every election since 2012. Ms. Ramos would like to vote early by mail in the upcoming July 14 primary runoff and November 3 general election in Texas but is currently prohibited from doing so due to Texas's Absentee Ballot Age Restriction. Given the ongoing COVID-19 pandemic, Ms. Ramos does not feel comfortable voting in person in these elections and risking her health, particularly due to treatment she is currently undergoing for a skin disorder that lowers her ability to fight infection. If Texas's Absentee Ballot Age Restriction forces Ms. Ramos to choose between

risking her health to vote in person in the upcoming elections or being disenfranchised, Ms. Ramos will not vote.

16.     Plaintiff ISAIAH RODRIGUEZ is a resident of and registered voter in the State of Texas. Mr. Rodriguez is 24 years old and lives in Houston. Mr. Rodriguez has worked on political campaigns in the past, including the most recent mayoral campaign for Houston Mayor Sylvester Turner, and recognizes the importance of voter turnout, voter engagement, and truly accessible and safe access to voting. Mr. Rodriguez is concerned about voting in person in the coming elections because of COVID-19 and would prefer to vote by mail but is worried that if he applies to vote early under the "disability" exception as construed by the state court in *DeBeauvoir*, he could be targeted for prosecution as a result of the Texas Attorney General's threats regarding voters who seek to use that exception to vote by mail due to fears about COVID-19. As a result, unless a court order issues that clearly enables him to vote by mail, Mr. Rodriguez plans on voting in person in the coming July election, assuming public health conditions permit it. Even so, he will take as many safety precautions as he can because he has family members who are particularly vulnerable to COVID-19. For example, he would wear a face mask, gloves, and would self-quarantine for at least 14 days after going to the polling place. He recognizes that voting under these circumstances would impose a significant burden on him, both in the act of voting itself and in the weeks that would follow.

17.     Defendant RUTH HUGHS is the Texas Secretary of State (the "Secretary") and is named as a Defendant in her official capacity. She is the State's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Texas, including the Absentee Ballot Age Restriction. *See* Tex. Elec. Code § 31.001(a). The Secretary acted under color of state law at all times relevant to this action.

### STATEMENT OF FACTS AND LAW

18.     The Texas Election Code provides that voters who are "65 years of age or older on election day" are eligible for early voting by mail. Tex. Elec. Code § 82.003. All voters *under* 65, however, are *prohibited* from voting early by mail unless they fit into one of the following narrow exceptions: they (1) expect to be absent from the county on Election Day, (2) have a sickness or physical condition that prevents them from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring their health, (3) are "expected [to] or likely [will be in] confinement for childbirth," or (4) are an otherwise eligible voter confined in jail. Tex. Elec. Code §§ 82.001-82.002, 82.004.

19.     While Texas denies voters younger than 65 years old the right to early vote by mail except in limited circumstances, they may be the group who in fact need the flexibility which early voting by mail provides the most. This age group is disproportionately more likely than voters aged 65 and older to have inflexible schedules, including full-time jobs (while lacking the leverage to leave in the middle of the day to go vote), class schedules, and childcare responsibilities that substantially limit their time. These factors make the prospect of finding time to cast an in-person ballot significantly more difficult.

20.     Within the group aged 18 to 65, those aged 18 to 29 face particular difficulties making it to in-person voting. For example, they are less likely than older voters to have easy and immediate access to reliable transportation.

21.     The percentage of 20- to 24-year-olds possessing driver's licenses has steadily decreased over the last 35 years, while the percentage for other age groups has remained significantly higher. *See* Michael Sivak & Brandon Schoettle, *Recent Decreases in the Proportion of Persons with a Driver's License Across All Groups*, University of Michigan Transportation

Research Institute, Jan. 2016, at 5 (finding "the percentages for 20- to 24-year-olds in 1983, 2008, 2011, and 2014 were 91.1%, 82.0%, 79.7%, and 76.7%, respectively," while "the percentages for 60- to 64-year-olds in 1983, 2008, 2011, and 2014 were 83.8%, 95.9%, 92.7%, and 92.1%, respectively").

22.     Whether they have a driver's license or not, young voters are less likely to have reliable access to transportation than older voters. As a result, they often must rely on public transportation or the assistance of other people in order to vote in person. The ongoing COVID-19 pandemic makes access to public transportation and ride sharing far less accessible and significantly more dangerous.

23.     Younger voters (particularly first-time voters) also suffer from what is often referred to by political scientists as information deficits when it comes to voting, simply because they have had less opportunities than older voters to learn and experience how the system works. As a result, young voters are less likely to know where to vote, how Texas's voting process works in general, or to be familiar with the voting processes and facilities in their geographical area.

24.     Limitations on voting by mail also correlate with longer lines and wait times for those voters 18 to 64 who can make it to the polls, and this is a particular problem in Texas.

25.     The lines at Texas polling places in the March 2020 primary were a national story, with some voters reporting wait times of up to five hours.

26.     The unique difficulties young voters face making it to the polls, the long lines they face when they can make it to the polls, and the results of Texas's strict limitations on early voting by mail are reflected in recent elections data.

27.     In the 2018 general election, for example, just 3.0% of all registered voters in the 15 counties with the largest number of registered voters voted early by mail. In the 2016 general

election, only 3.19% of registered voters in the 15 counties with the largest number of registered voters cast early ballots by mail. And in the 2014 general election, 2.35% of registered voters in those 15 counties were able to vote early by mail.

28.     But, while early voting by mail is sparingly used, individuals aged 65 or older—and those voters alone—are permitted to vote early by mail simply because of their age, and this benefit helps to dramatically skew the types of voters who turn out to vote in Texas.

29.     In the 2016 general election, for instance, 27.3% of voters aged 18 to 24 turned out to vote. By contrast, 65% of voters aged 65 and older—the only group of voters who can universally vote early in Texas by mail—turned out, more than double the youth vote's rate. Alexa Ura & Ryan Murphy, *Why is Texas voter turnout so low? Demographics play a big role*, TEXAS TRIBUNE (Feb. 23, 2018), https://www.texastribune.org/2018/02/23/texas-voter-turnout-electorate-explainer/.

30.     For all of the reasons discussed above, in-person voting is often substantially more difficult to successfully navigate by young voters even in an ordinary Texas election.

31.     In the coming elections, which will be held in the middle of a pandemic, Texas is likely to see marked consolidation of polling places, last minute changes to in-person voting plans, and exaggerated long lines, making in-person voting increasingly more difficult, and all the more so for voters who are still learning how to navigate the system.

32.     A novel coronavirus that causes the disease COVID-19 is spreading rapidly across the country, infecting thousands of citizens in communities across the nation—including Texas. As of April 27, 2020, a reported 25, 297 Texans had tested positive for the virus and 663 had died.

33.     The virus is proving to be wildly contagious and, more and more, it appears to be unwittingly spread by asymptomatic individuals, who may never show any signs of being infected themselves.

34.     While the mortality rates of COVID-19 are higher among older Americans, there are increasing reports that the disease is causing otherwise unexplainable large vessel strokes in young adults, including many individuals who had only mild symptoms or no symptoms of the virus at all.

35.     Due to the severity of the virus and its swift and dangerous spread, Texas Governor Greg Abbott issued a proclamation on March 31 ordering Texans to "minimize social gatherings and minimize in-person contact with people who are not in the same household." The proclamation urged people to implement social distancing and to work from home if possible.

36.     The proclamation is set to expire on April 30. However, even if it is lifted, Americans are broadly expected to socially distance themselves for many more months -- perhaps even years -- to protect themselves, their families, friends, and strangers in their communities, until a vaccine or broad herd immunity can protect against the continued and dangerous spread of the virus.

37.     Because of COVID-19, election officials across the country are opening fewer polling locations. *See, e.g.*, Gabriella Rusk, *Long lines forming at Milwaukee, Green Bay polling locations*, ASSOCIATED PRESS (Apr. 7, 2020),  https://www.nbc15.com/content/news/Long-lines-forming-at-Milwaukee-polling-locations-569436971.html (explaining in recent primary election in Wisconsin, Milwaukee opened five polling places compared to the 180 it normally opens, Green Bay opened two instead of its usual 31, and Madison opened 66 instead of its usual 92).

38.     In light of the ongoing pandemic, election officials are also limiting the number of voters who may enter a polling location at any time.

39.     On top of that, election officials are struggling to find and retain poll workers. *See, e.g.*, Laurel White, *Majority of Wisconsin Municipalities Facing Poll Worker Shortages Amid Pandemic*, WISCONSIN PUBLIC RADIO (Mar. 31, 2020), https://www.wpr.org/majority-wisconsin-municipalities-facing-poll-worker-shortages-amid-pandemic.

40.     This all has resulted in exceptionally long lines for voters at a time when coming into close contact with others has caused a public health crisis around the world. *See* Elise Viebeck, Amy Gardner, Dan Simmons, and Jan M. Larson, *Long Lines, anger and fear of infection: Wisconsin proceeds with elections under court order*, THE WASHINGTON POST (April 7, 2020), https://www.washingtonpost.com/politics/long-lines-form-in-milwaukee-as-wisconsin-proceeds-with-elections-under-court-order/2020/04/07/93727b34-78c7-11ea-b6ff-597f170df8f8_story.html.

41.     Yet because of the Absentee Ballot Age Restriction, the majority of Texas voters—including the Plaintiffs in this action—are prohibited from voting by mail.

## CLAIMS FOR RELIEF
### COUNT I
**Violation of Twenty-Sixth Amendment: Denial or Abridgement of the Right to Vote on Account of Age**
**U.S. Const. amend. XXVI; 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202**

42.     Plaintiffs reallege and incorporate by reference all previous and subsequent paragraphs as though set forth herein.

43.     The Twenty-Sixth Amendment to the U.S. Constitution provides: "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by . . . any State on account of age." U.S. CONST., amend. XXVI, § 1.

44.     The goal of the amendment "was not merely to empower voting by our youths but was affirmatively to encourage their voting, through the elimination of unnecessary burdens and barriers, so that their vigor and idealism could be brought within rather than remain outside lawfully constituted institutions." *Worden v. Mercer Cty. Bd. of Elections*, 294 A .2d 233, 243 (N.J. 1972).

45.     The Twenty-Sixth Amendment guarantees young, qualified voters a substantive right to participate equally with other qualified voters in the electoral process and broadly protects against both blatant and subtle forms of discrimination. *See, e.g.*, *Colo. Project-Common Cause v. Anderson*, 495 P.2d 220, 223 (Colo. 1972) (holding based on "[h]istory and reason" that the Twenty-Sixth Amendment's "prohibition against denying the right to vote to anyone eighteen years or older by reason of age applied to the entire process involving the exercise of the ballot and its concomitants").

46.     As a result, laws that have the purpose, at least in part, of denying or abridging the right to vote on account of age are unconstitutional. *League of Women Voters v. Detzner*, 314 F. Supp. 3d 1205, 1222–23 (N.D. Fla. 2018) (holding plaintiffs were substantially likely to succeed on merits of Twenty-Sixth Amendment claim in challenge to restrictive state guidance "unexplainable on grounds other than age").

47.     In direct contravention of the Twenty-Sixth Amendment, the Absentee Ballot Age Restriction facially discriminates on the basis of age by making no-excuse early vote by mail ballots available due solely to a voter's age. *See id*.

48.     It broadly prohibits every voter under 65 years old from voting by mail unless they meet one of several narrow exceptions, for no other reason than the voter has not yet celebrated their 65th birthday.

49.   Absent relief from this Court, Plaintiffs will continue to suffer the effects of intentional and unconstitutional discrimination because of age.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment:

(a)   declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that Tex. Elec. Code § 82.003 facially violates the Twenty-Sixth Amendment to the United States Constitution;

(b)   Enjoining the Secretary of State and her respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from rejecting early vote by mail ballot applications of otherwise qualified Texas voters for the reasons set forth in Tex. Elec. Code § 82.003 under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. § 2202;

(c)   awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action under 42 U.S.C. § 1988 and other applicable laws; and

(d)   granting such other and further relief as the Court deems just and proper.

Dated: April 29, 2020.                    Respectfully submitted,

**PERKINS COIE LLP**

*/s/ Skyler M. Howton*
Skyler M. Howton
TX# 24077907
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
SHowton@perkinscoie.com

Marc E. Elias*
John M. Geise*
Stephanie Command*
Zachary J. Newkirk*
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959

melias@perkinscoie.com
jgeise@perkinscoie.com
scommand@perkinscoie.com
znewkirk@perkinscoie.com
*Counsel for the Plaintiffs*
*\*Motions for Admission Pro Hac Vice*
*Forthcoming*

*Attorneys for Plaintiffs*