# Exhibit 1

No. 19A1055

# In the Supreme Court of the United States

————

TEXAS DEMOCRATIC PARTY; AND GILBERT HINOJOSA,
CHAIR OF THE TEXAS DEMOCRATIC PARTY; JOSEPH DANIEL CASCINO;
SHANDA MARIE SANSING; BRENDA LI GARCIA,

*Applicants,*

*v.*

GREG ABBOTT, GOVERNOR OF TEXAS; RUTH HUGHS, TEXAS SECRETARY OF
STATE; AND KEN PAXTON, ATTORNEY GENERAL OF TEXAS,

*Respondents.*

————

On Application to Vacate the Stay of the
United States Court of Appeals for the Fifth Circuit

————

## RESPONDENTS' OPPOSITION TO APPLICATION TO VACATE
## FIFTH CIRCUIT STAY OF PRELIMINARY INJUNCTION

————

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
Kyle.Hawkins@oag.texas.gov

KYLE D. HAWKINS
Solicitor General
  *Counsel of Record*

LANORA C. PETTIT
Assistant Solicitor General

*Counsel for Respondents*

## TABLE OF CONTENTS

Page

Table of Authorities.................................................................................. ii

Introduction............................................................................................... 1

Statement of the Case................................................................................ 3

    A.  Voting By Mail in Texas.................................................................... 3

    B.  State Officials Work Tirelessly to Make In-Person Voting Safe....... 4

    C.  Petitioners Pursue Unsuccessful Claims in State Court................... 6

    D.  Petitioners Bring This Duplicative Litigation in Federal Court....... 7

Argument................................................................................................... 9

    I.  This Court is Not Likely to Review the Interlocutory Decision Below.................. 9

    II.  The Fifth Circuit's Interlocutory Decision Applies the Correct Standard and Correctly Stayed the Preliminary Injunction ................ 16

        A.  Respondents are likely to succeed on all of Petitioners' claims..... 16

            1.  The Twenty-Sixth Amendment Does Not Confer on Petitioners the Right to Vote by Mail........................ 16

            2.  Respondents are likely to show that the district court's remedy was improper ............................... 23

        B.  Respondents will suffer irreparable injury if the stay is lifted...... 24

        C.  The other stay factors favor respondents ................................ 24

    III.  The Applicants Face No Threat of Serious or Irreparable Injury from the Stay Pending Appeal....................................... 25

Conclusion............................................................................................... 29

Certificate of Service............................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Abbott v. Perez,*
    138 S. Ct. 2305 (2018)...................................................................................4

*Abbott v. Veasey,*
    137 S. Ct. 612 (2017).............................................................................10, 11

*Am. Const. Co. v. Jacksonville T & K.W. Ry. Co.,*
    148 U.S. 372 (1895)...................................................................................10

*Anderson v. Celebrezze,*
    460 U.S. 790 (1983).............................................................................21, 22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................11

*Atwater v. Lago Vista,*
    532 U.S. 318 (2001)............................................................................. 20-21

*Baker v. Carr,*
    369 U.S. 186 (1969)...................................................................................22

*Bhd. of Locomotive Firemen & Enginemen v. Bangor & Aroostook R.R. Co.,*
    389 U.S. 327 (1967) (per curiam) ............................................................10

*Block v. North Dakota ex rel. Board of Univ. and School Lands,*
    461 U.S. 273 (1983)...................................................................................14

*Box v. Planned Parenthood of Ind. & Ky., Inc.,*
    139 S. Ct. 1780 (2019)...............................................................................20

*Brushaber v. Union Pac. R.R. Co.,*
    240 U.S. 1 (1916).......................................................................................19

*Bullock v. Calvert,*
    480 S.W.2d 367 (Tex. 1972) .....................................................................12

*Burdick v. Takushi,*
    504 U.S. 428 (1992)..........................................................................3, 21, 22

*California v. Texas,*
    No. 19-840 (U.S. Jan. 21, 2020)................................................................27

*Certain Named and Unnamed Non-Citizen Children v. Texas,*
    448 U.S. 1327 (1980)...................................................................................9

*Coleman v. Paccar, Inc.,*
    424 U.S. 1301 (1976).............................................................................9, 25

*Colorado Project-Common Cause v. Anderson,*
    495 P.2d 220 (Colo. 1972).........................................................................15

*Crawford v. Marion County Election Bd.,*
    553 U.S. 181 (2008)...............................................................................5, 22

*Eisner v. Macomber,*
   252 U.S. 189 (1920)................................................................................18

*Epps v. Fowler,*
   351 S.W.3d 862 (Tex. 2011) ...............................................................14

*Estelle v. Gamble,*
   429 U.S. 97 (1976).............................................................................10

*Ex parte Young*
   209 U.S. 123 (1908)...........................................................................12

*Eu v. San Francisco County Democratic Cent. Comm.,*
   489 U.S. 214 (1989)...........................................................................11

*Flagg Bros. v. Brooks,*
   436 U.S. 149 (1978)...........................................................................13

*Frank v. Walker,*
   574 U.S. 929 (2014)..............................................................................1

*Goosby v. Osser,*
   409 U.S. 512 (1973)...........................................................................17

*In re State of Texas,*
   No. 20-0394, 2020 WL 2759629 (Tex. May 27, 2020) (original proceeding) ............*passim*

*Jacobson v. Massachusetts,*
   197 U.S. 11 (1905)...............................................................................4

*Jolicoeur v. Mihaly,*
   488 P.2d 1 (Cal. 1971) .......................................................................15

*Kramer v. Union Free Sch. Dist. No. 15,*
   395 U.S. 621 (1969)...........................................................................18

*Lee v. Va. State Bd. of Elec.,*
   843 F.3d 592 (4th Cir. 2016) .............................................................21

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)...........................................................................13

*Maryland v. King,*
   133 S. Ct. 1 (2012) ............................................................................24

*Matsushita Elec. Indus. Co. v. Epstein,*
   516 U.S. 367 (1996)...........................................................................14

*McDonald v. Bd. of Election Comm'rs,*
   394 U.S. 802 (1969)..........................................................17, 18, 19, 20

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.,*
   501 U.S. 252 (1991)...........................................................................24

*Moreland v. Fed. Bureau of Prisons,*
   547 U.S. 1106 (2006).........................................................................10

*Mount Soledad Mem'l Ass'n v. Trunk,*
   567 U.S. 944 (2012)...........................................................................10

*Nashville Student Organizing Committee v. Hargett,*
   155 F. Supp. 3d 749 (M.D. Tenn. 2015)............................................19

*Nken v. Holder*,
  556 U.S. 418 (2009)..............................................................................16, 24, 25

*O'Brien v. Skinner*,
  414 U.S. 524 (1974)........................................................................................17

*Olson v. DEA*,
  878 F.2d 1458 (D.C. Cir. 1989).......................................................................23

*Pennhurst State Sch. v. Halderman*,
  465 U.S. 89 (1984)..........................................................................................12

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  134 S. Ct. 506 (2013)........................................................................................9

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) (per curiam) ..........................................................1, 11, 24

*R.R. Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941)........................................................................................13

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
  140 S. Ct. 1205 (2020)..............................................................................1, 11

*Rucho v. Common Cause*,
  139 S. Ct. 2484 (2019)....................................................................................22

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996)..........................................................................................12

*Sessions v. Morales-Santana*,
  137 S. Ct. 1678 (2017)....................................................................................23

*S. Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020)......................................................................................4

*Storer v. Brown*,
  415 U.S. 724 (1974)........................................................................................24

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)........................................................................................13

*Thompson v. Dewine*,
  959 F.3d 804 (6th Cir. 2020) (per curiam) ...............................................13, 26

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997)........................................................................................21

*Town of Chester v. Laroe Estates*,
  137 S. Ct. 1645 (2017)....................................................................................13

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014)..................................................................................18, 20

*Trump v. Int'l Refugee Assistance Project*,
  137 S. Ct. 2080 (2017) (per curiam) ..............................................................27

*Va. Office for Prot. & Advocacy v. Stewart*,
  563 U.S. 247 (2011)........................................................................................12

*Valentine v. Collier*,
  No. 20-20207, 2020 WL 3026716 (5th Cir. June 5, 2020)................................3

*Veasey v. Perry,*
   135 S. Ct. 9 (2014) ................................................................................1

*Veasey v. Perry,*
   136 S. Ct. 1823 (2016) ........................................................................11

*Vieth v. Jubelirer,*
   541 U.S. 267 (2004) ............................................................................22

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ............................................................................11

*Walgren v. Board of Selectmen of Town of Amherst,*
   519 F.2d 1364 (1st Cir. 1975) ...........................................................15

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ............................................................................20

*Will v. Hallock,*
   546 U.S. 345 (2006) ............................................................................10

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ................................................................................25

*Wrotten v. New York,*
   560 U.S. 959 (2010) ............................................................................10

**Constitutional Provisions and Statutes:**

U.S. CONST.
   amend. I ..............................................................................................7
   amend. XIV .........................................................................................7
   amend. XXVI ............................................................................*passim*

Ind. Code § 3-11-10-24(a)(5) ..................................................................20

Ky. Rev. Stat § 117.085(1)(a)(8) .............................................................20

La. Stat. § 18:1303(J) ..............................................................................20

Tex. Elec. Code
   ch. 64 ...................................................................................................3
   §§ 82.001-.004 .....................................................................................4
   § 82.002(a) .....................................................................................7, 20
   § 82.003 .......................................................................................16, 20
   § 82.005 ...............................................................................................3
   § 83.005 .............................................................................................13
   § 84.0041 ...........................................................................................12
   § 85.001 ...............................................................................................3
   § 86.001(a) .........................................................................................13
   § 86.004(a) .........................................................................................23
   § 87.0241 ...........................................................................................23
   § 273.021(a) .......................................................................................12
   § 276.013 ...........................................................................................12

Act of May 30, 1975, 64th Leg. R.S., ch. 682, § 5, 1975 Tex. Gen. Laws 2080 ........................3

Tex. S. Con. Res. 65, 62nd Leg., R.S., 1971 Tex. Gen. Laws 3867 ...........................4

**Misecellaneous:**

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION
    OF LEGAL TEXTS (2012)................................................................19

Br. of States of Indiana, et al. as Amici Curiae,
    *Abbott v. Veasey*, 137 S. Ct. 612 (2017) (No. 16-393) .........................................10

Chad W. Dunn, et al., *Legal Theories to Compel Vote-by-Mail in Federal Court*,
    11 CAL. L. REV. ONLINE 166 (2020) .............................................. 14-15

Eric S. Fish, Note, *The Twenty-Sixth Amendment Enforcement Power*,
    121 YALE L.J. 1168 (2012)..........................................................19

H.J. of Tex., 64th Leg., R.S. 4204 (1975) ......................................................4

House Committee on Elections, Bill Analysis, Tex. S.B. 1047,
    64th Leg., R.S., (1975), https://lrl.texas.gov/LASDOCS/64R/SB1047/
    SB1047_64R.pdf#page=82 ...........................................................4

Michael King, *Paxton Threatens Election Officials with Prosecution*,
    AUSTIN CHRON. (May 4, 2020), https://www.austinchronicle.com/daily/news/
    2020-05-04/paxton-threatens-election-officials-with-prosecution/ .................. 6-7

Michael T. Morley, *Election Emergencies: Voting in the Wake of Natural
    Disasters and Terrorist Attacks*, 67 EMORY L.J. 545 (2018) ......................21, 22

National Conference of State Legislatures, *Voting Outside the Polling Place:
    Absentee, All-Mail, and Other Voting at Home Options, Qualifying for an
    Absentee Ballot* (June 9, 2020), https://www.ncsl.org/research/elections-and-
    campaigns/absentee-and-early-voting.aspx.........................................20

S.J. of Tex. 64th Leg., R.S. 1932 (1975) ......................................................4

S. Rep. No. 91-26 14 (1971) ..................................................................19

STEPHEN M. SHAPIRO ET AL., SUPREME COURT PRACTICE  (10th ed. 2013) .................10

Tessa Weinberg, *Paxton Warns Local Officials Against Encouraging
    Vote-by-Mail Due to Coronavirus Fears*,
    FORT WORTH STAR-TELEGRAM (May 1, 2020) ...................................7

Tex. Gov. Proclamation (Mar. 18, 2020, 10:00 a.m.) .........................................5

Texas Health and Human Services, *Long Term Care*,
    https://hhs.texas.gov/services/aging/long-term-care .......................................20

Texas Secretary of State, *Election advisories*,
    https://www.sos.texas.gov/elections/laws/election-division-advisories.shtml .................5

Texas Secretary of State, *Election Advisory No. 2020-19,
    Voting In Person During COVID-19* (June 18, 2020),
    https://www.sos.texas.gov/elections/laws/advisory2020-19.shtml .................5, 6

Texas Secretary of State, *Health Protocols for Voters*,
    https://www.sos.texas.gov/elections/forms/health-protocols-for-voters.pdf ...................5

# INTRODUCTION

This Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Frank v. Walker*, 574 U.S. 929 (2014); *Veasey v. Perry*, 135 S. Ct. 9 (2014); *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell*, 549 U.S. at 4. And "[c]ourt orders affecting elections" can "result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5.

The Fifth Circuit faithfully applied that instruction to stay a sweeping district court order that would rewrite a provision of the Texas Election Code that has been in effect since 1975. Pet. App. 7a-8a. The Fifth Circuit correctly explained that petitioners' ineligibility to vote by mail does not implicate "the right to vote" protected by the Twenty-Sixth Amendment—or any other constitutional provision. There is no constitutional right to vote by mail, and each petitioner acknowledges that he or she has the option to vote by personal appearance on election day or during the extended early-voting period Texas is offering before the July primary.

Now, having waited nearly a month since the injunction was initially stayed, petitioners claim crisis and ask this Court to grant them the extraordinary relief of vacating the Fifth Circuit's unanimous stay and issuing a writ of certiorari before judgment precisely *because* there are just a few weeks before a statewide primary election. The Court should deny that request for multiple reasons.

*First*, this Court is not likely to grant review, particularly ahead of judgment. The case's interlocutory posture makes the petition unripe for review in this Court. Moreover, due largely to petitioners' own litigation strategy, it suffers from numerous jurisdictional defects and other impediments that would prevent this Court from reaching the merits. In any event, there is no conflicting authority, and petitioners' claims to the contrary misread the decisions they cite.

*Second*, even if petitioners could overcome numerous jurisdictional and procedural obstacles, the preliminary injunction fails on the merits. There is no constitutional right to vote by mail. So long as a State has permitted voting through other means, which Texas has, the right to vote is not implicated. And in any event, the district court clearly erred in its remedy. This Court has held squarely that when an exception to a general rule is unconstitutional, courts are to eliminate the exception, not grant it to everyone and supersede the general rule. The general rule in Texas is that everyone must vote by personal appearance. In overriding that legislative choice, the district court flouted this Court's pronouncements.

*Third*, petitioners have not shown irreparable harm because no state action impacts their right to vote. They admit, as they must, that they may vote by personal appearance on election day or during early voting. The only state action implicated is the Texas Legislature's enactment of an exception to the usual in-person voting rule for voters over the age of sixty-five, and that occurred nearly half a century ago. Moreover, if petitioners really faced ongoing irreparable harm, they would not have waited four weeks to seek relief, and they would have asked the Fifth Circuit for

expedited consideration before burdening this Court. Indeed, the Fifth Circuit recently demonstrated that it can resolve an expedited appeal 44 days after staying a preliminary injunction. *Valentine v. Collier*, No. 20-20207, 2020 WL 3026716 (5th Cir. June 5, 2020) (ruling on merits; stay entered April 22). The Fifth Circuit did not do the same here because petitioners did not ask it to.

This Court has long recognized that "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). The record reflects that respondents have acted diligently, guided by federal recommendations, to ensure that in-person voting remains safe. The Court should allow them to continue to do so. The application should be denied.

## STATEMENT OF THE CASE

### A.  Voting By Mail in Texas

Texas law has long required most voters to cast their ballots in person, either on election day, Tex. Elec. Code ch. 64, or during an early-voting period prescribed by the Legislature, *id.* §§ 82.005, 85.001. It has, however, recognized that certain voters face unique hardships in going to the polls. In 1975, the Legislature "extended absentee voting to voters 65 years of age or older." *In re State of Texas*, No. 20-0394, 2020 WL 2759629, at *8 (Tex. May 27, 2020) (*Texas*) (original proceeding) (citing Act of May 30, 1975, 64th Leg. R.S., ch. 682, § 5, 1975 Tex. Gen. Laws 2080, 2082). This bill was a significant revision of the Election Code designed, in part, "to bring the

Texas Election Code into conformity with" with the Twenty-Sixth Amendment.[1] The bill, which both lowered the voting age to 18 *and* allowed voters over 65 to vote by mail, was adopted by overwhelming majorities in both houses of the Texas Legislature. H.J. of Tex., 64th Leg., R.S. 4204 (1975); S.J. of Tex. 64th Leg., R.S. 1932 (1975).

Texas currently allows voters to vote by mail if they (1) anticipate being absent from their county of residence; (2) "ha[ve] a sickness or physical condition that prevents the voter from appearing at the polling place;" (3) are 65 or older; or (4) are confined to jail. Tex. Elec. Code §§ 82.001-.004.

### B.  State Officials Work Tirelessly to Make In-Person Voting Safe.

"Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)). It likewise places primary responsibility on state officials to conduct elections—a duty courts presume is discharged in good faith. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

To those ends, Texas officials have worked diligently to ensure both the safety and integrity of elections. On March 13, 2020, Governor Abbott declared a state of disaster in all of Texas's 254 counties. ROA.990-92.[2] He thereafter postponed certain elections and allowed political subdivisions to postpone others that were scheduled

---

[1] House Committee on Elections, Bill Analysis, Tex. S.B. 1047, 64th Leg., R.S., (1975), https://lrl.texas.gov/LASDOCS/64R/SB1047/SB1047_64R.pdf#page=82; *see also* Tex. S. Con. Res. 65, 62nd Leg., R.S., 1971 Tex. Gen. Laws 3867 (ratifying Amendment).

[2] ROA refers to the record on appeal in *TDP v. Abbott*, No. 20-50407 (5th Cir.).

in May. ROA.1003-04, 1049-500; Tex. Gov. Proclamation (Mar. 18, 2020, 10:00 a.m.).
More recently, the Governor issued a proclamation doubling the time available for
early voting in the July primary runoff. ROA.562-63. This will reduce lines and
crowds while allowing the State to protect the integrity of the election by ensuring
that voters still must present identification to ensure they are who they claim to be.
*Cf. Crawford v. Marion County Election Bd.*, 553 U.S. 181, 195-96 (2008) (plurality
op. of Stevens, J.) (describing problem of voter fraud "perpetrated using absentee
ballots").

Texas's Secretary of State has also issued numerous advisories and other forms
of guidance that ensure the safety of voting by personal appearance.[3] For example,
on May 26, the Secretary issued detailed guidelines in consultation with the Texas
Department of State Health Services, drawing heavily on guidance from the CDC
and recommending steps that both voters and poll workers should take to ensure
safety at the polls.[4] She supplemented those guidelines on June 18 with additional
protocols regarding (among other things) the spacing and cleaning of voting equip-
ment, the provision of protective equipment to poll workers and voters, and how to
address voters who appear to display symptoms of COVID-19.[5]

---

[3] Much of this guidance has been directed to individual election officials, but the Secretary's formal guidance is available on her website. Texas Secretary of State, *Election advisories*, https://www.sos.texas.gov/elections/laws/election-division-advisories.shtml.

[4] Texas Secretary of State, *Health Protocols for Voters*, https://www.sos.texas.gov/elec-tions/forms/health-protocols-for-voters.pdf.

[5] Texas Secretary of State, *Election Advisory No. 2020-19, Voting In Person During COVID-19* (June 18, 2020), https://www.sos.texas.gov/elections/laws/advisory2020-19.shtml.

Local election officials have similarly established protocols to ensure the safety of in-person voting. For example, Collin County's early-voting clerk testified that, even before the Secretary of State's most recent guidance, his jurisdiction planned to take numerous steps to promote social distancing, sanitize the polling place, and otherwise ensure that voting is conducted safely. ROA.572-74.

And there are surely more safeguards still to come as Texas officials diligently adapt election-related procedures as necessary to protect "the health and safety of voters, election workers, and local election officials and their staff." *Supra* n.5.

### C.  Petitioners Pursue Unsuccessful Claims in State Court.

This is not petitioners' first effort to rewrite Texas election law. In late March, petitioners (with others) sued the Travis County Clerk in Texas state court.[6] They asked the court to declare that "any eligible voter, regardless of age and physical condition," is disabled and may vote by mail due to COVID-19. *See* ROA.24. The state trial court obliged. ROA.1904-05. This order was stayed when the State immediately filed a notice of interlocutory appeal. *Texas*, 2020 WL 2759629, at *3.

Nevertheless, petitioners acted as if the state-court injunction remained in effect. A TDP official has testified that TDP expended considerable resources engaging in unspecified "voter contact methodologies." ROA.1611-12. And its counsel repeatedly claimed in the media that the injunction remained in force.[7]

---

[6] Garcia was not a named plaintiff in the state-court action, but the Texas Democratic Party ("TDP") sued on behalf of its members. ROA.306. The TDP has asserted that she is a member to establish standing here. ROA.961.

[7] Michael King, *Paxton Threatens Election Officials with Prosecution*, AUSTIN CHRON. (May 4, 2020), https://www.austinchronicle.com/daily/news/2020-05-04/paxton-threatens-election-officials-

In response to the "public confusion" caused by the state-court action and peti-
tioners' out-of-court conduct, Texas's Attorney General provided guidance to county
election officials about the meaning of state law. ROA.857. Because petitioners con-
tinued to misrepresent the status of Texas's mail-in ballot requirements, the State
sought a writ of mandamus asking the Texas Supreme Court to issue an order by
May 27 requiring five county clerks to abide by the text of the Election Code.
ROA.1830-59. On May 27, that court held "that a lack of immunity to COVID-19 is
not itself a 'physical condition' that renders a voter eligible to vote by mail within the
meaning of § 82.002(a)." *Texas*, 2020 WL 2759629, at *11. The state-court suit was
nonsuited on June 9. Resp. Exh. 1.

### D.   Petitioners Bring This Duplicative Litigation in Federal Court.

Hedging against such an unfavorable outcome in state court, petitioners filed
this action in the Western District of Texas on April 7 but delayed service on re-
spondents until well after the state-court injunction was entered. ROA.8. Petition-
ers' preliminary injunction request asserted that the Texas Election Code (1) vio-
lates the Twenty-Sixth Amendment as-applied, (2) discriminates on the basis of age
in violation of the Equal Protection Clause as-applied, (3) violates the First Amend-
ment, and (4) is void for vagueness. ROA.112-18, 122-25, 127-28.[8] And petitioners
accused General Paxton of voter intimidation and seeking to suppress political

---

with-prosecution/; Tessa Weinberg, *Paxton Warns Local Officials Against Encouraging Vote-by-
Mail Due to Coronavirus Fears*, FORT WORTH STAR-TELEGRAM (May 1, 2020), https://www.star-
telegram.com/news/politics-government/article242443406.html.

[8] The operative complaint includes facial challenges and race-based claims too, but petitioners
did not seek preliminary relief on those grounds. ROA.2153-54.

speech when he issued guidance about the meaning of state law. ROA.117-22, 125-27. They sought relief indistinguishable from what they sought (unsuccessfully) in state court. *Compare* ROA.1904-05, *with* ROA.2028-29.

On May 19, the district court issued a 74-page opinion and order requiring no-excuse-mail-in balloting in Texas. Pet. App. 59a-148a. Unable to discredit respondents' evidence of its significant measures to protect the safety of in-person voting, *see, supra* 4-6, the court largely disregarded it. The court also ignored the fact that the Supreme Court of Texas was to hear argument on the definition of "disability" in its Election Code within hours. The court concluded that, in light of the pandemic, all voters in Texas could vote by mail either as a matter of State law, ROA.2064, and/or under one of petitioners' constitutional theories Pet. App. 126a.

A Fifth Circuit panel unanimously stayed the injunction pending appeal. In particular, the Court agreed that respondents are likely to prevail in this litigation and that they would be irreparably harmed should the injunction take immediate effect. The panel members identified three independent bases to stay the injunction: a "threshold procedural error," *id.* at 56a (Costa, J., concurring in the stay), lack of a likelihood of success on the merits, *id.* at 19a, and the district court's impermissibly broad remedy, *id.* at 50a-51a (Ho, J., concurring). That the panel unanimously rejected the district court's legal conclusions is unsurprising; the district court's opinion turns more on "[q]uot[ations] [from] the Declaration of Independence, the Gettysburg Address, the Bible, and various poems" than any particular legal standard. *Id.* at 5a.

### ARGUMENT

To vacate the Fifth Circuit's stay, petitioners must make a threefold showing. *First*, they must show that the case "could and very likely would be reviewed here upon final disposition in the court of appeals." *Coleman v. Paccar, Inc.*, 424 U.S. 1301, 1304 (1976) (Rehnquist, J., in chambers); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 134 S. Ct. 506, 506 (2013) (Scalia, J., concurring); *id.* at 507 (Breyer, J., dissenting). *Second*, they must show that the Fifth Circuit was "demonstrably wrong in its application of accepted standards in deciding to issue the stay." *Coleman*, 424 U.S. at 1304. *Third*, they must show that their rights "may be seriously and irreparably injured by the stay." *Id.* The application fails to make any of these required showings.

## I.   This Court is Not Likely to Review the Interlocutory Decision Below.

Petitioners cannot show that this Court is likely to grant a writ of certiorari to review the Fifth Circuit's interlocutory order or the district court's preliminary injunction. That is always a difficult showing to make. *See Certain Named and Unnamed Non-Citizen Children v. Texas*, 448 U.S. 1327, 1331 (1980) (Powell, J., in chambers) (noting "exceptional" nature of relief). Petitioners cannot meet that burden for three reasons: (1) review is premature due to the interlocutory posture, (2) there are numerous vehicle problems, and (3) no split of authority creates a certworthy issue.

**A.** First and foremost, this Court is unlikely to grant review because the interlocutory posture renders the question unsuited to review. This Court's "normal

practice [is to] deny[] interlocutory review," even where cases present significant statutory or constitutional questions. *Estelle v. Gamble*, 429 U.S. 97, 114-15 (1976) (Stevens, J., dissenting). The Chief Justice best articulated this policy in *Abbott v. Veasey*, 137 S. Ct. 612 (2017). There, the Fifth Circuit had held that Texas's voter ID law violated the Voting Rights Act and remanded "for further proceedings on an appropriate remedy." *Id.* at 613 (Roberts, C.J., respecting the denial of certiorari). Texas sought immediate review. *Id.* Like here, the case came in the runup to an election, and as is true here, the validity of the challenged law had implications in other States. *See id.*; Br. of States of Indiana, et al. as Amici Curiae at 1, *Abbott*, 137 S. Ct. 612 (No. 16-393). The Court denied review, the Chief Justice explained, because "[t]he issues will be better suited for certiorari review" after final judgment. *Abbott*, 137 S. Ct. at 613.[9]

To be sure, this Court departs from its settled practice in a small set of "extraordinary cases." Stephen M. Shapiro et al., Supreme Court Practice 283 (10th ed. 2013) (collecting cases). But such cases are "very rare indeed." *Am. Const. Co. v. Jacksonville T & K.W. Ry. Co.*, 148 U.S. 372, 385 (1895). Essentially, the question must be "effectively unreviewable" on final judgment. *Will v. Hallock*, 546 U.S. 345, 349-50 (2006) (addressing the related collateral-order doctrine). For ex-

---

[9] *See also, e.g.*, *Mount Soledad Mem'l Ass'n v. Trunk*, 567 U.S. 944 (2012) (Alito, J., respecting the denial of certiorari); *Wrotten v. New York*, 560 U.S. 959 (2010) (Sotomayor, J.); *Moreland v. Fed. Bureau of Prisons*, 547 U.S. 1106, 1107 (2006) (Stevens, J.); *accord Bhd. of Locomotive Firemen & Enginemen v. Bangor & Aroostook R.R. Co.*, 389 U.S. 327, 328 (1967) (per curiam).

ample, this Court may review questions of a sovereign's immunity from suit, *Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009), or class-certification standards, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Petitioners' only claim to such extraordinary relief is that the question presented involves rules governing an upcoming election. That was, however, also true in *Veasey*, where the Court denied both interlocutory review and a request to vacate a stay. *Veasey v. Perry*, 136 S. Ct. 1823 (2016). More fundamentally, this theory directly contradicts this Court's repeated instruction that federal courts should *not* rush to intervene in the run-up to an election. *Republican Nat'l Comm.*, 140 S. Ct. at 1207. Last minute changes to election rules are likely to harm voters by engendering confusion, *Purcell*, 549 U.S. at 4-5, and to undermine a State's "indisputably . . . compelling interest in preserving the integrity of its election process," *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989).

**B.** Adherence to the standard practice is especially warranted here, where a district court issued a preliminary injunction before Governor Abbott had been served and before respondents were able to plead and take discovery on any affirmative defenses. And, in this instance, the issues not yet resolved below include procedural obstacles likely to preclude this Court's review of the merits.

**1.** The federal courts lack jurisdiction over this matter because the defendants do not enforce the challenged statutes. Petitioners' claims are thus barred by sovereign immunity and Article III's standing requirement.

**a.** Founded in federalism principles, sovereign immunity protects a State, state agency, or state officer from suit absent consent unless Congress has validly abrogated that immunity. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). The only relevant route around this immunity here is the *Ex parte Young* doctrine, which permits a suit against a state official to enjoin violations of federal law. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).

Under that doctrine, a defendant may be sued only if he has a sufficient connection to an actual violation of federal law. *Ex parte Young* 209 U.S. 123, 157 (1908); *see also, e.g.*, *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 92 (1984). Here, respondents lack the requisite connection to the challenged conduct because, under state law, they do not enforce the mail-in ballot rules. *See Texas*, 2020 WL 2759629, at *10-11 (discussing how local early-voting clerks enforce mail-in ballot rules); *Bullock v. Calvert*, 480 S.W.2d 367, 372 (Tex. 1972) (noting the limits of the Secretary's role). Thus the *Ex parte Young* exception to sovereign immunity does not apply.

To be sure, the Texas Attorney General is authorized to prosecute election fraud. Tex. Elec. Code § 273.021(a). But petitioners have not alleged that he has sought to enforce the challenged statute. He has stated publicly that there are criminal consequences for encouraging individuals who are not eligible to vote by mail. ROA.857-59. But that is just a correct statement of Texas law, Tex. Elec. Code §§ 84.0041, 276.013, not a threat of enforcement any particular individual that could

be sufficient to invoke federal jurisdiction. *Cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014).[10]

**b.** For similar reasons, respondents are also likely to show that petitioners lack standing. Standing is "not dispensed in gross"; it requires the Court to examine the type of harm that petitioners seek to vindicate. *Town of Chester v. Laroe Estates*, 137 S. Ct. 1645, 1650-51 (2017). Because "rights secured by the Constitution are protected only against infringement by governments," petitioners must prove that respondents' action prevented them from voting. *Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978); *see also Thompson v. Dewine*, 959 F.3d 804, 810 (6th Cir. 2020) (per curiam). They are unlikely to do so because (among other reasons) the gravamen of their claim is the impact of COVID-19 on in-person voting. *E.g.*, ROA.108-10, 2144-48. This harm is not chargeable to respondents; Texas's Governor, Attorney General, and Secretary of State do not control COVID-19. Under state law, they do not even handle mail-in ballot applications; local officials do. Tex. Elec. Code §§ 83.005, 86.001(a). Thus, Appellees' asserted injuries are not traceable to respondents' actions. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

**c.** What's more, as Judge Costa noted in concurrence, "[t]his was a testbook case for *Pullman* abstention." Pet. App. 33 (Costa, J., concurring in the judgment) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941)). The district

---

[10] While the Fifth Circuit concluded that respondents had not shown a likelihood of success as to these jurisdictional defects, Pet. App. 9a-19a, it reached that conclusion on the basis of limited briefing and an underdeveloped record.

court went out of its way to decide a disputed question of state law literally hours before the Texas Supreme Court heard oral argument on that exact question. *See id*. The district court had a clear duty to let the state courts weigh in first, yet did not. Pet. App. 33-34. That alone makes the preliminary injunction unlawful. *See* Pet. App. 34 (faulting district court's "threshold procedural error").

**2.** Due to petitioners' delays in service, respondents have not yet had the opportunity to plead—let alone litigate—numerous affirmative defenses. Those defenses present vehicle problems here. For example, the law in question has been on the books for 45 years, which, under the doctrine of laches, precludes the equitable relief petitioners seek. *Cf. Block v. North Dakota ex rel. Board of Univ. and School Lands*, 461 U.S. 273, 292 (1983) ("A constitutional claim can become time-barred just as any other claim can."). Similarly, because petitioners dismissed their state-court claims to avoid an adverse ruling on the merits following *Texas*, that nonsuit had claim-preclusive consequences under state law. *See, e.g.*, *Epps v. Fowler*, 351 S.W.3d 862, 868-69 (Tex. 2011) (discussing *res judicata* impact of nonsuits under state law). And state law determines the "preclusive effect of a prior state judgment in a subsequent action involving a claim within the exclusive jurisdiction of the federal courts." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 374 (1996).

**C.** Finally, petitioners are wrong to insist that the Fifth Circuit's decision "sharply conflicts with decisions" from other courts. App. 5. Petitioners' counsel has candidly admitted that this is a "first-of-its kind lawsuit to compel the state to provide its voters with relatively unrestricted vote-by-mail," Chad W. Dunn, et al., *Legal*

*Theories to Compel Vote-by-Mail in Federal Court*, 11 CAL. L. REV. ONLINE 166, 167 (2020), and he is still shopping for "additional theories" to test. *Id.* at 177.

The cases petitioners cite raise a different question: whether a state action or rule that *completely prevents* voters between the ages of 18 and 21 from participating in an election or class of elections complies with the Twenty-Sixth Amendment. In *Jolicoeur v. Mihaly*, 488 P.2d 1 (Cal. 1971), California's registration rules prevented young voters from voting in local elections at their places of residence. Recognizing that all politics are local, the California Supreme Court held that the State could not deny "voters the right to help determine the resolution of issues which vitally affect them." *Id.* at 576. *Colorado Project-Common Cause v. Anderson*, 495 P.2d 220, 221 (Colo. 1972), invalidated a rule limiting an initiative process to those over 21 on similar grounds. *Walgren v. Board of Selectmen of Town of Amherst*, 519 F.2d 1364, 1365 (1st Cir. 1975), did not address a broadly applicable rule, but it applied the same principle to a deliberate effort by local authorities to schedule an election to prevent college students from voting.

None of these cases holds, as petitioners suggest, that all age-based restrictions on voting mail-in ballots are unconstitutional. And none addresses the questions at the heart of this case: whether the "right to vote" in the Twenty-Sixth Amendment includes a right to vote by mail and whether a rule that applies equally to those aged 19 and 64 runs afoul of the Twenty-Sixth Amendment. Because no court has addressed those questions, the Court should allow them to percolate.

## II. The Fifth Circuit's Interlocutory Decision Applies the Correct Standard and Correctly Stayed the Preliminary Injunction.

Petitioners have not shown that the stay is demonstrably wrong under the governing standard. In ruling on a motion for stay pending appeal, courts consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (quotation marks and alterations omitted). A stay pending appeal "simply suspends judicial alteration of the status quo." *Id.* at 429. Here, the status quo is that most Texas voters vote in person. Respondents are using their best efforts—guided by medical experts and CDC recommendations—to make sure that process is managed safely and securely. Each of the *Nken* factors confirms that this status quo should be preserved during the appeal.

### A. Respondents Are Likely to Succeed on All of Petitioners' Claims.

Respondents' view of the merits is correct, and in any event, the district court's remedy was unlawful.

#### 1. The Twenty-Sixth Amendment Does Not Confer on Petitioners the Right to Vote by Mail.

The Fifth Circuit correctly held that the constitutional right to vote does not extend to a right to vote by mail (whether under the Twenty-Sixth Amendment or otherwise). Petitioners' claims are reviewed under the rational-basis standard, which section 82.003 easily satisfies.

**a.** Petitioners' various claims that Texas has abridged their (or their members') right to vote fail because the right to vote is not at issue. Instead, this case turns on

16

"a claimed right to receive [and cast] absentee ballots." *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807 (1969). Texas encourages petitioners to vote by other means, and the Constitution does not guarantee them a right to vote by mail. *Id.*

In *McDonald*, the plaintiffs were incarcerated persons from the Chicago area who claimed a right to vote by mail because they could not "readily appear at the polls." *Id.* at 803. Like Texas, Illinois law "made absentee balloting available to [only] four classes of persons," including (among others) those who would be absent from their precincts or suffered from disabilities. *Id.* at 803-04. Because incarcerated persons were not among the limited classes, plaintiffs' applications "were refused." *Id.* at 804. Examining Illinois law under an equal-protection framework, the Court held that so long as the inmates had another means of voting, the "Illinois statutory scheme" would not "ha[ve] an impact on [their] ability to exercise the fundamental right to vote." *Id.* Though it might have been easier for an inmate to vote by mail, no state action "specifically disenfranchise[d]" the plaintiffs. *Id.* at 808.

This Court has recognized that the right to vote includes a right to vote by mail only when some other state action entirely prevents a class of voters from exercising the franchise. Specifically, in *Goosby v. Osser*, 409 U.S. 512 (1973), the Court held that "the Pennsylvania statutory scheme absolutely prohibits [incarcerated persons] from voting" by denying them absentee ballots, access to polling places in prisons, *or* transportation to a poll. *Id.* at 521-22. The Court found that *combination* of laws unconstitutionally disenfranchised voters. *Id.*; *see also O'Brien v. Skinner*, 414 U.S. 524, 530 (1974). There is a vast difference between "a statute which ma[kes] casting

17

a ballot easier for some who were unable to come to the polls" and a "statute absolutely prohibit[ting]" someone else "from exercising the franchise." *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 n.6 (1969).

Because Texas has not "specifically disenfranchised" petitioners, its vote-by-mail rules are subject to rational-basis review. Petitioners would *prefer* to vote by mail due to the pandemic, ROA.1034, 1038, 1613, but *McDonald* did not ask what the plaintiffs would have *preferred*. 394 U.S. at 808 n.6. Absent proof that other means of voting are unavailable, "the right to vote" was not "at stake." *Id.* at 807.

**b.** The Twenty-Sixth Amendment does not change this. The Amendment's language, history, and the few cases that have interpreted it all confirm that it leaves the *McDonald* rule regarding mail-in ballots intact. The Twenty-Sixth Amendment, proposed and ratified within a few short months in 1971, provides that: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged . . . on account of age."

The Amendment does not define the term "right to vote," so it "must be interpreted by reference to historical practices and understandings" at the time of ratification. *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014) (quotation marks omitted). This includes other times the same term is used in the Constitution, and "the affect attributed to them before the amendment was adopted." *Eisner v. Macomber*, 252 U.S. 189, 205 (1920). *McDonald* is particularly instructive because it was decided little more than two years before the amendment was ratified. As "the Amendment contains nothing repudiat[ing] or challenging" *McDonald*, "the Amendment at least

18

impliedly" ratifies *McDonald's* understanding of the right to vote. *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 18 (1916); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 322-26 (2012).

This interpretation is confirmed by the history of the Amendment itself, which was an effort to extend the right to vote as it was then understood to individuals between the ages of 18 and 21. Eric S. Fish, Note, *The Twenty-Sixth Amendment Enforcement Power*, 121 YALE L.J. 1168, 1184-95 (2012). If anything, that history reflects that absentee voting was seen as an inadequate substitute for in-person voting because it imposes "special burdens" on voters. S. Rep. No. 91-26 14 (1971).

The limited effect of the Amendment has also been recognized in the few cases interpreting it. For example, in *Nashville Student Organizing Committee v. Hargett*, the court upheld a voter ID law because even if younger voters were less likely to have an acceptable form of ID, the law "[wa]s not an abridgement of the right to vote." 155 F. Supp. 3d 749, 757 (M.D. Tenn. 2015). As the court explained, "the handful of cases" finding a violation of the Twenty-Sixth Amendment "have involved state actions that actually blocked young people from voting rather than simply exclud[ing] measures that would make it easier for them to do so." *Id.* at 757-58. As discussed above (at 15), the cases upon which petitioners rely fall into this category.

But unlike the laws at issue in petitioners' cases, Texas law does not disenfranchise anyone. To the contrary, Texas election officials have taken numerous steps to make sure that voting in person—as Texas's Legislature has required—will be safe.

*Supra* at 4-6. As a result, Texas's mail-in-ballot rules do not implicate the right to vote and are subject only to rational-basis review. *McDonald*, 394 U.S. at 807.

**c.** Texas's decision to facilitate voting by those over 65 is "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). Section 82.003 rationally recognizes that, as a group, individuals over 65 face greater challenges in visiting the polls. Many reside in nursing homes and have limited mobility.[11] Although others may also have difficulties reaching the polls, the line need not be "perfectly tailored," so long as the distinction is not arbitrary. *Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780, 1782 (2019); *see also* Tex. Elec. Code § 82.002(a) (permitting voters with a "disability" to vote by mail).

Texas's conclusion that the problems facing older voters are unique is not novel. Some States allow all voters to vote by mail, but among States that limit vote-by-mail to certain citizens, "[i]t is . . . common to provide this option to elderly voters."[12] Moreover, these statutes are not new. Texas amended its law to allow those over 65 to vote by mail in the *same bill* that extended the right to vote to those aged 18 to 21. *Supra* at 3-4. That a law is passed immediately after a constitutional amendment is strong evidence that the law was seen to be consistent with the amendment. *See Town of Greece*, 572 U.S. at 576; *see also, e.g., Atwater v. Lago Vista*, 532 U.S. 318,

---

[11] Texas Health and Human Services, *Long Term Care*, https://hhs.texas.gov/services/aging/long-term-care.

[12] National Conference of State Legislatures, *Voting Outside the Polling Place: Absentee, All-Mail, and Other Voting at Home Options, Qualifying for an Absentee Ballot* (June 9, 2020), https://www.ncsl.org/research/elections-and-campaigns/absentee-and-early-voting.aspx; *see also, e.g.*, Ind. Code § 3-11-10-24(a)(5); Ky. Rev. Stat § 117.085(1)(a)(8); La. Stat. § 18:1303(J).

337-40 (2001). That such laws have existed across multiple States without challenge or controversy for 45 years is no surprise: they make good sense.

   **d.** Even if a more stringent test applies, petitioners are not likely to prevail. Because "[e]very decision that a State makes in regulating an election will, inevitably, result in somewhat more inconvenience for some voters than for others," this Court has developed a balancing test for claims related to the franchise. *Lee v. Va. State Bd. of Elec.*, 843 F.3d 592, 601 (4th Cir. 2016). Under this standard, the Court must first identify the relevant state action and then "weigh 'the character and magnitude of the asserted injury" to the plaintiff's constitutionally protected right "against the precise interests put forward by the State as justification for the burden imposed.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 790, 789 (1983)). State actions imposing severe burdens on the right to vote are closely scrutinized. *Id.* "Lesser burdens, however, trigger less exacting review." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).

   The specific state action here is unclear because petitioners assert an as-applied challenge based on unspecified "Election Conditions." ROA.31. But only an intentional governmental action can form the basis of a constitutional claim. Michael T. Morley, *Election Emergencies: Voting in the Wake of Natural Disasters and Terrorist Attacks*, 67 EMORY L.J. 545, 589 & nn. 315, 320-24 (2018) (collecting cases). Petitioners' proposed theories run into two roadblocks.

*First*, petitioners' arguments fail because the pandemic is to blame for the "Conditions" petitioners dislike, not respondents. Because a virus cannot violate the Constitution, these "Election Conditions" do not support a claim.

*Second*, if petitioners' challenged "Election Conditions" refer to "[s]ubjective risk assessments concerning the need" to change the rules of an election to protect voters against a virus, petitioners present a "quintessentially political question" which "the judiciary should not be in a position of second-guessing." *Morley*, *supra*, at 598-99; *see Baker v. Carr*, 369 U.S. 186, 217 (1969). In particular, there is no "judicially discoverable and manageable standard" for when a public-health emergency requires a State to change from a predominately in-person voting model to an entirely vote-by-mail election system. *Baker*, 369 U.S. at 217.

Courts may look to many sources to find such a standard, but the result must be "grounded in a 'limited and precise rationale,'" and must be "'clear, manageable, and politically neutral.'" *Rucho v. Common Cause*, 139 S. Ct. 2484, 2498 (2019) (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 306-08 (2004) (Kennedy, J., concurring)). Neither petitioners nor the district court attempted to articulate such a standard.[13]

---

[13] To the extent petitioners object to the Texas Legislature's decision to limit mail-in ballots, their claims fail under *Anderson* and *Burdick*. Texas requires in-person voting to deter fraud. The risk of voter fraud "is real," *Crawford*, 553 U.S. at 195-96; "could affect the outcome of a close election," *id.*; and "is a documented problem" with absentee ballots, *id.* at 225 (Souter, J., dissenting). The district court received evidence that this is a "serious problem" in Texas, ROA.781-82. It should have weighed that evidence and the evidence that the State's protective measures will protect voters, *e.g.*, ROA.595-621, 607, against the alleged "burden [on] the plaintiff's rights." *Burdick*, 504 U.S. at 434. The district court did not. ROA.2124-25.

## 2. Respondents are likely to show that the district court's remedy was improper.

Even if the Court were to hold that the Twenty-Sixth Amendment required equal access to mail-in ballots for voters of all ages, the Fifth Circuit still appropriately stayed the injunction because the district court ordered the wrong remedy. Petitioners do not claim a constitutional right to a mail-in ballot, only equality based on age. App. 11. But "[h]ow equality is accomplished . . . is a matter on which the Constitution is silent." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 (2017). That silence must be filled by the political branches. *Olson v. DEA*, 878 F.2d 1458, 1464 (D.C. Cir. 1989) (Ginsburg, J.). Typically, when an exception creates a constitutional problem, the exception yields to the general rule, not the general rule to the exception. *See Morales-Santana*, 137 S. Ct. at 1698-1701.

As Texas's highest court just confirmed, Texas's political branches have consistently chosen to allow voting by mail only by providing exceptions to the general rule of in-person voting. *Texas*, 2020 WL 2759629, at *8. Under those circumstances, the district court should have "level[ed] down" and eliminated the exception that allows those over 65 to vote by mail and thereby creates the constitutional problem, not leveled up so that the exception swallows Texas's long-established law requiring in-person voting. *Morales-Santana*, 137 S. Ct. at 1698.

Petitioners assert (at 15 n.1) that leveling down is not possible because many citizens over 65 have already applied to vote by mail this year. They may have *applied*, but ballots have not yet been sent for at least the November election, Tex. Elec. Code § 86.004(a), or tabulated for the primary, *id.* § 87.0241. Informing voters

over 65 who have applied for mail-in ballots that they must appear on election day would be logistically difficult, but this is why the Court has stated that federal courts should not change voting rules this close to an election. *Purcell*, 549 U.S. at 4-5.

## B.    Respondents Will Suffer Irreparable Injury if the Stay is Lifted.

The preliminary injunction causes irreparable injury because it impedes the enforcement of Texas's Election Code. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (alterations omitted) (Roberts, C.J. in chambers). This principle is not applied for the sake of state officials. Instead, the "ultimate purpose" of federalism and of guarding state sovereignty "is to protect the liberty and security of the governed." *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991).

Those concerns are particularly important here. It is one of the most fundamental obligations of the State to enact clear and uniform laws for voting to ensure "fair and honest" elections, to bring "order, rather than chaos, [to] the democratic process[]," and ultimately to allow the vote to be fully realized. *Storer v. Brown*, 415 U.S. 724, 730 (1974). Although COVID-19 indisputably represents a public-health crisis, that cannot and must not change our structure of government.

## C.    The Other Stay Factors Favor Respondents.

The remaining *Nken* factors favor respondents. As described below (Part III), the Fifth Circuit correctly held that petitioners have not shown a likelihood of irrep-

arable harm absent an injunction. And the public interest "merge[s]" with respondents "when the Government is the opposing party." *Nken*, 556 U.S. at 435. Because the injunction was wrong on the merits and the remedy and because the other factors favor respondents, the application fails to show that the Fifth Circuit was "demonstrably wrong in its application" of the *Nken* factors. *Coleman*, 424 U.S. at 1304.

## III. The Applicants Face No Threat of Serious or Irreparable Injury from the Stay Pending Appeal.

Petitioners also fail to show that the stay causes them irreparable injury. *Id.* The likelihood of irreparable harm must be judged "in light of" preventative measures already in place. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22-23 (2008) (examining harm "in the absence of an injunction"). Petitioners cannot make that showing for at least two reasons: (1) the injunction is unnecessary to protect voters; and (2) petitioners' own dilatory litigation conduct confirms that there is neither an emergency nor a threat of irreparable harm that justifies this Court's intervention.

**A.** Petitioners make three assertions of irreparable harm. App. 19-21. None meets the standard to vacate the stay. *First*, petitioners assert that if the stay remains in effect, voters will lose "the ability to cast a mail-in ballot provided by the district court's order." *Id.* at 19. But mere inability to take advantage of the district court's order cannot be enough to vacate a stay because that happens *any* time an intermediate court of appeals stays a trial court order pending appeal.

*Second*, petitioners speculate that some "harm to their health, and potentially even their lives," will result if they vote in person. *Id.* But the record does not support

25

that allowing individual petitioners to vote by mail is necessary or sufficient to pre-vent them from contracting COVID-19. One of the flaws with the district court order is that it ignored that petitioners offered *no* evidence that respondents have taken any action that caused them harm. To the contrary, their complaint is that *COVID-19* may harm them. ROA.77-82. But a virus is not a state actor.

Moreover, the record does not suggest that the steps respondents have taken are inadequate to protect voters. Indeed, petitioners rely largely on the record de-veloped in state court, where their witnesses admitted that they had not taken ac-count of measures taken by the State as of April 15 (the date of the state-court hear-ing) to ensure that Texas elections are safe. *E.g.*, ROA.225, 228-29, 250-53. These witnesses *could not* have taken account of measures taken in the intervening time.

*Third*, petitioners assert that "[e]ligible voters who avoid those irreparable harms by forgoing the right to vote because of fear of contacting COVID-19 suffer a different irreparable injury." App. 19. But again, that choice has not been forced *by the State*. A court "cannot hold private citizens' decisions to stay home for their own safety against the State"—particularly where, as here, the State has taken numer-ous steps to protect the safety of in-person voting. *Thompson*, 959 F.3d at 810.

**B.** Petitioners' own dilatory litigation conduct effectively concedes that there is no threat of irreparable harm that justifies this Court's involvement on an emer-gency basis. The Fifth Circuit stayed the district court's injunction on May 20. Pet. App. 7a-8a. It issued a briefing schedule the same day. Resp. Exh. 2. On May 22, the Fifth Circuit issued an order clearly indicating that it would not rule on the larger

26

stay until after the Texas Supreme Court was expected to rule on the State's mandamus petition on May 27. Resp. Exh. 3. Petitioners took no action to expedite proceedings. The Fifth Circuit issued its opinion maintaining the stay pending appeal on June 4. Pet. 1a. Petitioners again did nothing. They cannot fairly criticize the Fifth Circuit for declining to grant relief that they did not request.

An additional twelve days elapsed before petitioners filed this application, which asks this Court to disrupt its normal process and decide on an emergency basis the constitutionality of a law that has existed unchallenged for 45 years. When parties face a true emergency that only this Court can resolve, they say so immediately; they do not wait weeks. *Compare Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2085 (2017) (per curiam) (noting emergency motions filed one day after adverse decision), *with California v. Texas*, No. 19-840 (U.S. Jan. 21, 2020) (denying emergency relief when petitioners waited 16 days after an adverse decision).

For their part, Respondents have sought relief promptly due to the impact that rewriting Texas's mail-in ballot rules would have on the upcoming election. When the state trial court issued its injunction, the State filed a notice of appeal that stayed the injunction within 30 minutes. *Compare* ROA.372, *with* Resp. Exh. 4. When a state intermediate court temporarily reinstated the injunction, ROA.1483, the State sought *and was granted* emergency relief from the Texas Supreme Court in about 30 hours. Resp. Exh. 5. And when the federal district court issued its injunction at 4:34 p.m. on May 19, Resp. Exh. 6, respondents sought an emergency stay in the Fifth Circuit at 10:56 a.m. the next day, Resp. Exh. 7.

By contrast, petitioners waited to seek relief until two weeks after the Fifth Circuit's stay opinion, and nearly four weeks after the district court's order was initially stayed. And they timed their filing so that the Court would need to rule on their request less than a month before an election. Their dilatory conduct in attacking a decades-old law on the eve of an election counsels strongly against granting relief.

## CONCLUSION

The Court should deny the application to vacate the stay.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
Kyle.Hawkins@oag.texas.gov

/s/ Kyle D. Hawkins
KYLE D. HAWKINS
Solicitor General
  *Counsel of Record*

LANORA C. PETTIT
Assistant Solicitor General

*Counsel for Respondents*

29

## CERTIFICATE OF SERVICE

I certify that this document has been filed with the clerk of the Court and served by electronic mail and Federal Express on June 22, 2020, on counsel of record in this case.

/s/ Kyle D. Hawkins
KYLE D. HAWKINS
Solicitor General
*Counsel for Respondents*

30

EXHIBIT 1

No. 14-20-00358-CV
_____

## IN THE FOURTEENTH COURT OF APPEALS
## HOUSTON TEXAS
_____

The State of Texas
Intervenor-Defendant – Appellant
v.
Texas Democratic Party, et al.
Plaintiffs – Appellees
&
Zachary Price, et al.
Intervenor-Plaintiffs – Appellees

_____

On Appeal from the District Court of Travis County, 201st Judicial District
Cause No. D-1-GN-20-001610, Hon. Tim Sulak, Presiding.
_____

## APPELLEES' UNOPPOSED JOINT MOTION TO DISMISS APPEAL
## FOR LACK OF JURISDICTION
_____

To the Honorable Justices of the Fourteenth Court of Appeals:

Appellees, Texas Democratic Party et al. and Zachary Price et al., under the authority of Texas Rules of Appellate Procedure 10.1 and 42.3, move the Court to dismiss the pending appeal for want of jurisdiction due to the absence of a case or controversy.

1.     On June 09, 2020, Appellees nonsuited all of their claims against Defendant Dana DeBeauvoir, in her official capacity as Travis County Clerk, and

Intervenor-Defendant/Appellant The State of Texas. A copy of Appellee's Notice of Nonsuit is attached as Exhibit A.  Appellees' nonsuit followed the Texas Supreme Court decision in *In re State of Texas*, No. 20-0394, 2020 WL 2759629 (Tex. May 27, 2020).

2.      Under the Texas Rules of Civil Procedure, "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." TEX. R. CIV. P. 162. "Under Texas law, parties have an absolute right to nonsuit their own claims for relief at any time during the litigation until they have introduced all evidence other than rebuttal evidence at trial." *Villafani v. Trejo*, 251 S.W.3d 466, 468-69 (Tex. 2008).

3.      Rule 162 applies in this case because Appellees have filed their nonsuit while this matter is pending on interlocutory appeal from the trial court's grant of Appellee's motion for a temporary injunction and Defendants' pretrial plea to the jurisdiction. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (holding that plaintiff's nonsuit of claims against defendant asserting sovereign immunity was effective upon filing and mooted the case or controversy between the parties, even though nonsuit was taken after defendant had filed an interlocutory appeal). As in this case, the appellee in *Shultz* filed a nonsuit while the appellant's interlocutory appeal from the denial of

its plea to the jurisdiction was pending in the court of appeals. *Id.* at 100. Thereafter, the appellee filed a motion to dismiss the appellant's interlocutory appeal for want of jurisdiction, which the court of appeals denied. *Id.* The Supreme Court "conclude[d] that the nonsuit deprived the court of appeals of jurisdiction. . . ." *Id.* "Accordingly, without hearing oral argument, [the Supreme Court] grant[ed] the petition for review, vacate[d] the court of appeals' order, and dismiss[ed] the appeal for want of jurisdiction." *Id.* at 101.

4.    Similarly, a nonsuit also moots a temporary injunction, because the temporary injunction ceases to exist upon nonsuit. *Gen. Land Office of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990) ("In this case, the trial court had jurisdiction over the underlying case and correctly granted the nonsuit, irrespective of the fact that an appeal had been perfected. As a consequence of the trial court's granting the nonsuit, the temporary injunction ceased to exist and the appeal became moot.").

5.    Supreme Court precedent therefore compels dismissal here. "A nonsuit 'extinguishes a case or controversy from the moment the motion is filed or an oral motion is made in open court; the only requirement is the mere filing of the motion with the clerk of the court.'" *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862–63 (Tex. 2010) (quoting *Shultz*, 195 S.W.3d at 100). When, as here, "a claim is timely nonsuited, the controversy as to that claim is extinguished, the merits become

moot, and jurisdiction as to the claim is lost." *City of Dallas v. Albert*, 354 S.W.3d 368, 375 (Tex. 2011); *see Villafani*, 251 S.W.3d at 469 ("One unique effect of a nonsuit is that it can vitiate certain interlocutory orders, rendering them moot and unappealable.").

6.  "While the date on which the trial court signs an order dismissing the suit is the 'starting point for determining when a trial court's plenary power expires,' a nonsuit is effective when it is filed." *Shultz*, 195 S.W.3d at 100 (quoting *In re Bennett*, 960 S.W.2d 35, 38 (Tex.1997)). Likewise, "[a]lthough [Rule 162] permits motions for costs, attorney's fees, and sanctions to remain viable in the trial court, it does not forestall the nonsuit's effect of rendering the merits of the case moot." *Id*. "Even the automatic stay of section 51.014(b) of the Texas Civil Practice and Remedies Code that arises from the filing of a notice of appeal from the denial of a plea to the jurisdiction does not defeat the immediate effect of a nonsuit at the moment the notice of nonsuit was filed." *Bush, Trustee for the Found. Sch. Fund v. Hines*, No. 10-19-00340-CV, 2019 WL 6769624, at \*1 (Tex. App.—Waco Dec. 11, 2019, no pet. h.).

7. Because Appellees have nonsuited all of their claims against all the Defendants/Appellants, there is no live controversy for the Court to decide, and this Court lacks jurisdiction over the pending interlocutory appeal. *Shultz*, 195 S.W.3d at 100-01. "Appellate courts are prohibited from deciding moot controversies

because the separation-of-powers article prohibits advisory opinions on abstract questions of law." *Klein v. Hernandez*, 315 S.W.3d 1, 3 (Tex. 2010). Accordingly, the Court should grant Appellee's unopposed motion and dismiss the appeal for want of jurisdiction. *See Shultz*, 195 S.W.3d at 100-01; *see also Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012) ("If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction."); *Olley v. Raamco Tx. Properties*, No. 01-11- 00321-CV, 2013 WL 1087729, at *1 (Tex. App.—Houston [1st Dist.] Mar. 14, 2013, no pet.) (dismissing appeal for lack of jurisdiction following nonsuit).

8. Appellant State of Texas does not oppose the dismissal of this appeal in light of Plaintiffs/Appellees non-suit of their claims.

## PRAYER

Appellees ask this Court to dismiss the Appellants' interlocutory appeal for want of jurisdiction.

Respectfully submitted,

By:  /s/ Joaquin Gonzalez
Joaquin Gonzalez
Texas Bar No. 24109935
Joaquin@texascivilrightsproject.org
Mimi Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

Edgar Saldivar
TX Bar No. 24038188
Thomas Buser-Clancy
TX Bar No. 24078344
Andre Segura
TX Bar No. 24107112

ACLU FOUNDATION OF TEXAS,
INC.
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966
esaldivar@aclutx.org
tbuser-clancy@aclutx.org
asegura@aclutx.org


Sophia Lin Lakin**
New York Bar No. 5182076
Dale E. Ho**
New York Bar No. 4445326

AMERICAN CIVIL LIBERTIES
UNION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 519-7836
Fax: (212) 549-2654
slakin@aclu.org
dho@aclu.org

** Pro hac vice application forthcoming

*ATTORNEYS FOR*
*INTERVENOR-PLAINTIFFS*

TEXAS DEMOCRATIC PARTY

By: ____/s/ Chad W. Dunn____
Chad W. Dunn
General Counsel
State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

K. Scott Brazil
State Bar No. 02934050
Brazil & Dunn, LLP
13231 Champion Forest Drive, Suite
406
Houston, Texas 77069
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
scott@brazilanddunn.com

Dicky Grigg
State Bar No. 08487500
Law Office of Dicky Grigg, P.C.
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: 512-474-6061
Facsimile: 512-582-8560
dicky@grigg-law.com

Martin Golando
The Law Office of Martin Golando,
PLLC

SBN #: 24059153
N. Saint Mary's, Ste. 700
San Antonio, Texas 78205
(210) 892-8543
martin.golando@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF CONFERENCE**

By email communication with Defendant/Appellant's Counsel Lanora Pettit on June 09, 2020, Appellant has stated that it is unopposed to this Motion.

*/s/* Joaquin Gonzalez

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 09, 2020, a true and correct copy of the foregoing document was served electronically upon Lanora Pettit, attorney for Appellant.

*/s/* Joaquin Gonzalez

# Exhibit A

Plaintiffs' Notice of Nonsuit

6/9/2020 12:00 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-20-001610
Alexus Rodriguez

No. D-1-GN-20-001610

| | | |
|---|---|---|
| TEXAS DEMOCRATIC PARTY, et. al | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| and | § | |
| | § | |
| ZACHARY PRICE, LEAGUE OF | § | |
| WOMEN VOTERS OF TEXAS, | § | |
| LEAGUE OF WOMEN VOTERS | § | |
| AUSTIN AREA, MOVE TEXAS | § | |
| ACTION FUND, WORKERS DEFENSE | § | |
| ACTION FUND, | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| *Intervenor-Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| DANA DEBEAUVOIR | § | |
| | § | |
| *Defendant*, | § | |
| | § | |
| and | § | |
| | § | |
| STATE OF TEXAS | § | |
| | § | |
| *Intervenor-Defendant.* | § | 201st JUDICIAL DISTRICT |

---

**Plaintiffs' and Intervenor-Plaintiffs' Notice of Non-Suit**

---

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiffs, TEXAS DEMOCRATIC PARTY, AND GILBERTO HINOJOSA, IN HIS CAPACITY AS CHAIRMAN OF THE TEXAS DEMOCRATIC PARTY, JOSEPH DANIEL CASCINO AND SHANDA MARIE SANSING, (hereinafter referred to as Plaintiffs) and ZACHARY PRICE, LEAGUE OF WOMEN VOTERS OF TEXAS, LEAGUE OF WOMEN

1

VOTERS AUSTIN AREA, MOVE TEXAS ACTION FUND, WORKERS DEFENSE ACTION FUND (hereinafter referred to as Intervenor-Plaintiffs), brought suit seeking injunctive and declaratory relief that lack of immunity to COVID-19 alone is sufficient to meet the eligibility criteria to vote by mail as set forth in Section 82.002 of the Texas Election Code.  Plaintiffs' and Intervenor-Plaintiffs' hereby non-suit their claims against Defendant DANA DEBEAUVOIR and Intervenor-Defendant STATE OF TEXAS with prejudice to the refiling of same, pursuant to Rule 162 of the Texas Rules of Civil Procedure.

All costs of court are taxed against the party incurring same. The docket clerk is requested to enter this notice into the minutes of the Court.

Dated this 9th date of June, 2020.

Respectfully submitted,

TEXAS DEMOCRATIC PARTY

By: ___/s/ Chad W. Dunn_____
Chad W. Dunn
General Counsel
State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

K. Scott Brazil
State Bar No. 02934050
Brazil & Dunn, LLP
13231 Champion Forest Drive, Suite 406
Houston, Texas 77069
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
scott@brazilanddunn.com

Dicky Grigg
State Bar No. 08487500

2

Law Office of Dicky Grigg, P.C.
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: 512-474-6061
Facsimile: 512-582-8560
dicky@grigg-law.com

Martin Golando
The Law Office of Martin Golando, PLLC
SBN #: 24059153
405 N. Saint Mary's, Ste. 700
San Antonio, Texas 78205
(210) 892-8543
martin.golando@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

/s/ Joaquin Gonzalez
Joaquin Gonzalez
Texas Bar No. 24109935
Joaquin@texascivilrightsproject.org
Mimi Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

Edgar Saldivar
TX Bar No. 24038188
Thomas Buser-Clancy
TX Bar No. 24078344
Andre Segura
TX Bar No. 24107112

ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Telephone: (713) 325-7011
Fax: (713) 942-8966

3

esaldivar@aclutx.org
tbuser-clancy@aclutx.org
asegura@aclutx.org


Sophia Lin Lakin**
New York Bar No. 5182076
Dale E. Ho**
New York Bar No. 4445326

AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 519-7836
Fax: (212) 549-2654
slakin@aclu.org
dho@aclu.org

** Pro hac vice application on file

***ATTORNEYS FOR INTERVENOR-
PLAINTIFFS***


## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing response has

been sent via the Court's electronic filing system to all counsel of record on June 9, 2020.


/s/ Chad W. Dunn
Chad W. Dunn

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Gwen Kelly on behalf of Chad Dunn
Bar No. 24036507
gwen@brazilanddunn.com
Envelope ID: 43585969
Status as of 06/09/2020 12:21:27 PM -05:00

Associated Case Party: Texas Democratic Party

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chad Dunn | | chad@brazilanddunn.com | 6/9/2020 12:00:42 PM | SENT |

Associated Case Party: Zachary Price

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joaquin Gonzalez | | joaquin@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Rebecca Harrison Stevens | | beth@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Mimi Marziani | | mimi@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |

Associated Case Party: League of Women Voters of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joaquin Gonzalez | | joaquin@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Mimi Marziani | | mimi@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Rebecca Harrison Stevens | | beth@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |

Associated Case Party: League of Women Voters of Austin-Area

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joaquin Gonzalez | | joaquin@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Rebecca Harrison Stevens | | beth@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Mimi Marziani | | mimi@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |

Associated Case Party: MOVE Texas Action Fund

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gwen Kelly on behalf of Chad Dunn
Bar No. 24036507
gwen@brazilanddunn.com
Envelope ID: 43585969
Status as of 06/09/2020 12:21:27 PM -05:00

Associated Case Party: MOVE Texas Action Fund

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joaquin Gonzalez | | joaquin@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Rebecca Harrison Stevens | | beth@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Mimi Marziani | | mimi@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |

Associated Case Party: Workers Defense Action Fund

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joaquin Gonzalez | | joaquin@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Rebecca Harrison Stevens | | beth@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |
| Mimi Marziani | | mimi@texascivilrightsproject.org | 6/9/2020 12:00:42 PM | SENT |

Case Contacts

| Name |
|------|
| Scott Brazil |
| Martin Golando |
| Richard Alan Grigg |
| Edgar Saldivar |
| Thomas Buser-Clancy |
| Andre Segura |
| Sophia LinLakin |
| Dale E.Ho |
| Sherine Thomas |
| Gwen Kelly |
| Mel Noyola |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gwen Kelly on behalf of Chad Dunn
Bar No. 24036507
gwen@brazilanddunn.com
Envelope ID: 43585969
Status as of 06/09/2020 12:21:27 PM -05:00

Case Contacts

| Leslie Dippel | | leslie.dippel@traviscountytx.gov | 6/9/2020 12:00:42 PM | SENT |
|---|---|---|---|---|

EXHIBIT 2

**Pettit, Lanora**

| | |
|---|---|
| **From:** | cmecf_caseprocessing@ca5.uscourts.gov |
| **Sent:** | Wednesday, May 20, 2020 11:12 AM |
| **To:** | Abrams, Michael |
| **Subject:** | 20-50407 Texas Democratic Party, et al v. Greg Abbott, Governor of  TX, et al "Briefing Notice" |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer.  PACER access fees apply to all other users.  To avoid later charges, download a copy of each document during this first viewing.

United States Court of Appeals for the Fifth Circuit

Notice of Docket Activity

The following transaction was entered on 05/20/2020 at 11:07:58 AM CDT and filed on 05/20/2020
Case Name:      Texas Democratic Party, et al v. Greg Abbott, Governor of  TX, et al
Case Number:   20-50407
Document(s): https://urldefense.proofpoint.com/v2/url?u=https-3A__ecf.ca5.uscourts.gov_docs1_00505423033-3Fuid-3D27f9ab1a03e5804c&d=DwICaQ&c=Z_mC1sqOcfBCM1ZptXokOj7_ss37GsaAMzCZyvOxKN4&r=MxYvaQcKXsxiOXeNNhlBRoYG2jIIMEOTe7v8RPrMov4&m=tP2PyryLw4sJRwTKt2vFotiuFikhdrrOkLlLnOYhcTU&s=hVpqPLfTyLFiQ1suQ72qTwS9I420h3stiXmPFyqF8DA&e=

Docket Text:
BRIEFING NOTICE ISSUED A/Pet's Brief Due on 06/29/2020 for Appellants Greg Abbott, Governor of the State of Texas, Ruth Hughs and Ken Paxton. [20-50407] (CMB)

Notice will be electronically mailed to:

Mr. Michael Abrams: michael.abrams@oag.texas.gov, katrina.shanks@oag.texas.gov, laura.redd@oag.texas.gov Mr. Kembel Scott Brazil: scott@brazilanddunn.com, duncha@sbcglobal.net, cyndiwoodfin@sbcglobal.net, Karen_Nix@sbcglobal.net Mr. Kyle Douglas Hawkins: kyle.hawkins@oag.texas.gov, sabrina.wycoff@oag.texas.gov, maria.williamson@oag.texas.gov

The following document(s) are associated with this transaction:
Document Description:  BR-1 Letter
Original Filename:          /opt/ACECF/live/forms/CindyBroadhead_2050407_9317064_AppellantBriefingNotice-BR1_148.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1105048708 [Date=05/20/2020] [FileNumber=9317064-0]
[8b352e9fd141b13e39339d0511baf23b2aed203293e27fbb03824ad76d1e7f9f17cea12054190d83ff6046928454b5904367e10e8130bacadea9e2e691ca5e12]]
Recipients:
        Mr. Michael Abrams
        Mr. Kembel Scott Brazil
        Mr. Kyle Douglas Hawkins

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

May 20, 2020

Mr. Michael Abrams
Office of the Attorney General
General Litigation Division
P.O. Box 12548
Austin, TX 78711-2548

Mr. Kyle Douglas Hawkins
Office of the Attorney General
Office of the Solicitor General
P.O. Box 12548 (MC 059)
Austin, TX 78711-2548

    No. 20-50407   Texas Democratic Party, et al v. Greg
                          Abbott, Governor of  TX, et al
                          USDC No. 5:20-CV-438

Dear Mr. Abrams, Mr. Hawkins,

We have docketed the appeal as shown above, and ask you to use the case number for future inquires.  You can obtain a copy of our briefing checklist on the Fifth Circuit's website "http://www.ca5.uscourts.gov/docs/default-source/forms-and-documents---clerks-office/rules/brchecklist".

Briefing Notice: The record is complete for purposes of the appeal, see FED. R. APP. P. 12.  Appellant's brief and record excerpts are due within 40 days of the date shown above, see FED. R. APP. P. & 5TH CIR. R. 28, 30, and 31.  See also 5TH CIR. R. 30.1.2 and 5TH CIR. R. 31.1 to determine if you have to file electronic copies of the brief and record excerpts. [If required, electronic copies MUST be in Portable Document Format (PDF).]

Record Excerpts: 5TH CIR. R. 30.1.7(c) provides that the electronic PDF version of the record excerpts should contain pages representing the "tabs" identified in the index of the document. However, we remind attorneys that the actual paper copies of record excerpts filed with the court must contain actual physical tabs that extend beyond the edge of the document, to facilitate easy identification and review of tabbed documents.

Brief Covers: THE CASE CAPTION(S) ON BRIEF COVERS MUST BE EXACTLY THE SAME AS THE CASE CAPTION(S) ON THE ENCLOSED TITLE CAPTION

SHEET(S). YOU WILL HAVE TO CORRECT ANY MODIFICATIONS YOU MAKE TO THE CAPTION(S) BEFORE WE SUBMIT YOUR BRIEF TO THE COURT.

<u>Policy on Extensions</u>: The court grants extensions sparingly and under the criteria of 5ᵀᴴ Cɪʀ. R. 31.4. If you request an extension, you must contact opposing counsel and tell us if the extension is opposed or not. 5ᵀᴴ Cɪʀ. R. 31.4 and the Internal Operating Procedures following rules 27 and 31 state that except in the most extraordinary circumstances, the <u>maximum</u> extension for filing briefs is 30 days in criminal cases and 40 days in civil cases.

<u>Reply Brief</u>: We do not send cases to the court until all briefs are filed, except in criminal appeals. Reply briefs must be filed within the 21 day period of Fᴇᴅ. R. Aᴘᴘ. P. 31(a)(1). See 5ᵀᴴ Cɪʀ. R. 31.1 to determine if you have to file electronic copies of the brief, and the format.

<u>Dismissal of Appeals</u>: The clerk may dismiss appeals without notice if you do not file a brief on time, or otherwise fail to comply with the rules.

<u>Appearance Form</u>: If you have not electronically filed a "Form for Appearance of Counsel," you must do so within 14 days of this date. You must name each party you represent, See Fᴇᴅ. R. Aᴘᴘ. P. and 5ᵀᴴ Cɪʀ. R. 12. The form is available from the Fifth Circuit's website, www.ca5.uscourts.gov.

ATTENTION ATTORNEYS: Direct access to the electronic record on appeal (EROA) for pending appeals will be enabled by the U S District Court on a per case basis. Counsel can expect to receive notice once access to the EROA is available. Counsel must be approved for electronic filing and must be listed in the case as attorney of record before access will be authorized. Instructions for accessing and downloading the EROA can be found on our website at            http://www.ca5.uscourts.gov/docs/default-source/forms/instructions-for-electronic-record-download-feature-of-cm. Additionally, a link to the instructions will be included in the notice you receive from the district court.

Sealed documents, except for the presentence investigation report in criminal appeals, will not be included in the EROA. Access to sealed documents will continue to be provided by the district court only upon the filing and granting of a motion to view same in this court.

The clerk's office offers brief templates and the ability to check the brief for potential deficiencies prior to docketing to assist in the preparation of the brief. To access these options, log in to CM/ECF and from the Utilities menu, select 'Brief Template' (Counsel Only) or 'PDF Check Document'.

## Guidance Regarding Citations in Pleadings.

5ᵀᴴ Cɪʀ. R. 28.2.2 grants the Clerk the authority to create a standard format for citation to the electronic record on appeal. You must use the proper citation format when citing to the electronic record on appeal.

A. In single record cases, use the short citation form, "ROA" followed by a period, followed by the page number. For example, "ROA.123."

B. For multiple record cases, cite "ROA" followed by a period, followed by the Fifth Circuit appellate case number of the record referenced, followed by a period, followed by the page of the record. For example, "ROA.13-12345.123.".

C. Please note each individual citation must end using a termination of a period (.) or semicolon (;).

Pro se litigants may request the record from the district court to prepare their brief. Those proceeding in forma pauperis may receive the record without payment of shipping costs. If you wish to receive exhibits, you must specifically request them.

**Once you obtain the record, you should check it within 14 days of receipt for any missing or incomplete items. If you need to request a supplemental record or order transcripts, do so promptly. The court will not grant extensions of time to file your brief because you did not timely check the record.**

**Reminder as to Sealing Documents on Appeal:** Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request by a party to seal pleadings, record excerpts, or other documents on our court docket. Counsel moving to seal matters must explain in particularity the necessity for sealing in our court. Counsel do not satisfy this burden by simply stating that the originating court sealed the matter, as the circumstances that justified sealing in the originating court may have changed or may not apply in an appellate proceeding. It is the obligation of counsel to justify a request to file under seal, just as it is their obligation to notify the court whenever sealing is no longer necessary. An unopposed motion to seal does not obviate a counsel's obligation to justify the motion to seal.

Sincerely,

LYLE W. CAYCE, Clerk

By: _/s/Melissa Courseault_____
Melissa Courseault, Deputy Clerk
504-310-7701

Enclosure(s)

cc w/encl:
     Mr. Kembel Scott Brazil

Case No. 20-50407


TEXAS DEMOCRATIC PARTY; GILBERTO HINOJOSA, Chair of the Texas
Democratic Party; JOSEPH DANIEL CASCINO; SHANDA MARIE SANSING;
BRENDA LI GARCIA,

                    Plaintiffs - Appellees

v.

GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS; RUTH HUGHS, Texas
Secretary of State; KEN PAXTON, Texas Attorney General,

                    Defendants - Appellants

EXHIBIT 3

**Pettit, Lanora**

| | |
|---|---|
| **From:** | cmecf_caseprocessing@ca5.uscourts.gov |
| **Sent:** | Friday, May 22, 2020 1:28 PM |
| **To:** | Abrams, Michael |
| **Subject:** | 20-50407 Texas Democratic Party, et al v. Greg Abbott, Governor of  TX, et al "Non Dispositive Court Order granting to file amicus brief" |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer.  PACER access fees apply to all other users.  To avoid later charges, download a copy of each document during this first viewing.

United States Court of Appeals for the Fifth Circuit

Notice of Docket Activity

The following transaction was entered on 05/22/2020 at 1:25:47 PM CDT and filed on 05/22/2020
Case Name:     Texas Democratic Party, et al v. Greg Abbott, Governor of  TX, et al
Case Number:   20-50407
Document(s): https://urldefense.proofpoint.com/v2/url?u=https-3A__ecf.ca5.uscourts.gov_docs1_00505426204-3Fuid-3D1ceef08f497b299e&d=DwIFaQ&c=Z_mC1sqOcfBCM1ZptXokOj7_ss37GsaAMzCZyvOxKN4&r=MxYvaQcKXsxiOXeNNhlBRoYG2jIIMEOTe7v8RPrMov4&m=-swN0u_BfeEwVfrrteT149wvO9aN5q7u8AxjqJ_33Ro&s=tyrG3LntkTGxDmjYW3sq0Wo9Eq-X8OBX20hX6sHyyQA&e=

Docket Text:
COURT ORDER - IT IS ORDERED that the motion of Dana Debeauvoir, the Travis County Clerk, for leave to file a brief as amicus curiae in support of appellees' opposition to the appellant's motion for stay pending appeal is GRANTED. IT IS FURTHER ORDERED that the motion of Harris County for leave to file a brief as amicus curiae in support of the appellees' opposition to the appellants' motion for stay pending appeal is GRANTED. Except for new developments or extenuating circumstances, any further submissions by the parties or potential amici curiae, regarding the motion for stay pending appeal, are to be filed by May 27.  [9318431-2], [9318358-2]  [20-50407] (MBC)

Notice will be electronically mailed to:

Mr. Michael Abrams: michael.abrams@oag.texas.gov, katrina.shanks@oag.texas.gov, laura.redd@oag.texas.gov Mr. Kembel Scott Brazil: scott@brazilanddunn.com, duncha@sbcglobal.net, cyndiwoodfin@sbcglobal.net, Karen_Nix@sbcglobal.net Ms. Leslie Wood Dippel: leslie.dippel@traviscountytx.gov, amy.pollock@traviscountytx.gov, amy.murray@traviscountytx.gov Mr. Chad Wilson Dunn: chad@brazilanddunn.com, scott@brazilanddunn.com, carol@brazilanddunn.com, gwen@brazilanddunn.com, chad@brazilanddunn.com Mr. Kyle Douglas Hawkins: kyle.hawkins@oag.texas.gov, sabrina.wycoff@oag.texas.gov, maria.williamson@oag.texas.gov Ms. Susan Lea Hays: hayslaw@me.com, hayslaw@sbcglobal.net Ms. Lanora Christine Pettit: Lanora.pettit@oag.texas.gov, cecilia.hertel@oag.texas.gov, sabrina.wycoff@oag.texas.gov Ms. Mahogane Denea Reed: mahogane_reed@ca5.uscourts.gov

The following document(s) are associated with this transaction:
Document Description:  Non Dispositive Court Order
Original Filename:        20-50407_Electronic Order #01.pdf
Electronic Document Stamp:

[STAMP acecfStamp_ID=1105048708 [Date=05/22/2020] [FileNumber=9318918-0]
[8cc4d50959acb05d7775da396b4c6c6603d0972ba750d14d8c801894f9c26c6ab28c76dd69972e22b3ac46ac511a40bd2d
e43f9b3bc2cc876ff0ecc00d02511f]]
Document Description:  MOT-2 Letter
Original Filename:        /opt/ACECF/live/forms/MelissaCourseault_2050407_9318918_MotionNotice-MOT-2_381.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1105048708 [Date=05/22/2020] [FileNumber=9318918-1]
[252b29fdf1d7f87bc86127bd3f70752f7943b6f713e477b0356f7e7c8f88a8f493acf17da54712d663061e5d289f0531903d
99e37d070a3eb2dedf9325d447f4]]
Recipients:

      Mr. Michael Abrams
      Mr. Kembel Scott Brazil
      Ms. Leslie Wood Dippel
      Mr. Chad Wilson Dunn
      Mr. Kyle Douglas Hawkins
      Ms. Susan Lea Hays
      Ms. Lanora Christine Pettit
      Ms. Mahogane Denea Reed

EXHIBIT 4

4/17/2020 4:09 PM
**Velva L. Price
District Clerk
Travis County
D-1-GN-20-001610
Selina Hamilton**

No. D-1-GN-20-001610

| | | |
|---|---|---|
| TEXAS DEMOCRATIC PARTY AND GILBERTO HINOJOSA, IN HIS CAPACITY AS CHAIRMAN OF THE TEXAS DEMOCRATIC PARTY, JOSEPH DANIEL CASCINO and SHANDA MARIE SANSING, | § § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § | |
| and | § § | |
| ZACHARY PRICE, LEAGUE OF WOMEN VOTERS OF TEXAS, LEAGUE OF WOMEN VOTERS OF AUSTIN-AREA, MOVE TEXAS ACTION FUND, WORKERS DEFENSE ACTION FUND, | § § § § | TRAVIS COUNTY, TEXAS |
| *Plaintiff-Intervenors* | § § | |
| v. | § § | |
| DANA DEBEAUVOIR, IN HER CAPACITY AS TRAVIS COUNTY CLERK, | § § | |
| *Defendant.* | § § | |
| STATE OF TEXAS, | § § | |
| *Intervenor.* | § | 201st JUDICIAL DISTRICT |

**NOTICE OF INTERLOCUTORY APPEAL**

Pursuant to Texas Rules of Appellate Procedure 25.1(a) and 26.1(b), Intervenor the State of Texas, by and through its Attorney General, gives notice of appeal from the Order signed by Judge Tim Sulak on April 17, 2020 in Cause No. D-1GN-20-001610 and styled "*Texas Democratic Party, et al. v. Dana Debeauvoir, in her Capacity as Travis County Clerk.*" Said Order denied the Intervenor's Plea to the Jurisdiction and granted Plaintiffs' and Plaintiff-Intervenors' application for a temporary injunction. The Order enjoins Travis County and its agents from enforcing Texas Election Code § 82.002 pending final judgment in this action. The Order similarly

purports to enjoin the State and State actors from enforcing Texas Election Code §
82.002 in an unspecified geographic area.

Intervenor is entitled to an interlocutory appeal pursuant to Civil Practice and
Remedies Code section 51.014(a)(4) and (8), which allows for an immediate appeal
from an order that grants a temporary injunction or that denies a plea to the
jurisdiction. Intervenor appeals to the Third Court of Appeals. This is an accelerated
appeal as provided by Texas Rule of Appellate Procedure 28.1. This is not a parental
termination or child protection case, as defined in Rule 28.4.

Pursuant to Texas Civil Practice and Remedies Code § 51.014(b), all further
proceedings in this court are stayed pending resolution of Intervenor's appeal. Upon
filing of this instrument, the April 17, 2020 Temporary Injunction is superseded
pursuant to Texas Civil Practice and Remedies Code section 6.001(b) and Texas Rule
of Appellate Procedure 29.1(b).

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
MICHAEL R. ABRAMS

964

Texas Bar No. 24087072
Assistant Attorneys General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov
michael.abrams@oag.texas.gov

**ATTORNEYS FOR INTERVENOR
STATE OF TEXAS**

CERTIFICATE OF SERVICE

I certify that on April 17, 2020, the foregoing instrument was served electronically through the electronic-filing manager in compliance with TRCP 21a to:

Chad W. Dunn
General Counsel
State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
(512) 717-9822 Tel.
(512) 515-9355 Fax
chad@brazillanddunn.com

K. Scott Brazil
State Bar. No. 02934050
Brazil & Dunn, LLP
13231 Champion Forest Drive, Suite 406
Houston, Texas 77069
(281) 580-6310 Tel.
(281) 580-6362 Fax
scott@brazilanddunn.com

Dicky Grigg
State Bar No. 08487500
Law Office of Dicky Gregg, P.C.
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
(512)474-6061 Tel.
(512)582-8560
dicky@grigg-law.com

Martin Golando
The Law Office of Martin Golando, PLLC
State Bar No. 24059153
N. Saint Mary's, Suite 700
San Antonio, Texas 78205
(210) 892-8543
martin.golando@gmail.com

ATTORNEYS FOR PLAINTIFFS

Joaquin Gonzalez

Texas Bar No. 24109935
Joaquin@texascivilrightsproject.org
Mimi Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
Beth@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741
(512) 474-5073 Telephone
(512) 474-0726 Facsimile

Edgar Saldivar
Texas Bar No. 24038188
esaldivar@aclutx.org
Thomas Buser-Clancy
Texas Bar No. 24078344
Tbuser-clancy@aclutx.org
Andre Segura
Texas Bar No. 24107112
asegura@aclutx.org
ACLU FOUNDATION OF TEXAS, INC
P.O. Box 8306
Houston, Texas 77288
(713) 325-7011 Telephone
(713) 942-8966 Fax

Sophia Lin Lakin
New York Bar No. 5182076
slakin@aclu.org
Dale E. Ho
New York Bar No. 4445326
dho@aclu.org
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7836 Telephone
(212) 549-2654 Fax

ATTORNEYS FOR INTERVENOR-
PLAINTIFFS

Sherine Thomas
Sherine.Thomas@traviscountytx.gov
Leslie Dippel
Leslie.Dippel@traviscountytx.gov

ATTORNEYS FOR DANA DEBAEUVOIR
IN HER CAPACITY AS TRAVIS COUNTY CLERK

*/s/Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

EXHIBIT 5



# THE SUPREME COURT OF TEXAS

Orders Pronounced May 15, 2020

**ORDERS ON CASE GRANTED**

THE FOLLOWING PETITION FOR WRIT OF
MANDAMUS IS SET FOR ORAL ARGUMENT:

20-0394  IN RE STATE OF TEXAS

      [**Note**: This case has been set for oral argument at 2:30 p.m., May 20, 2020.]

A STAY IS ISSUED IN THE FOLLOWING PETITION FOR WRIT OF
MANDAMUS:

20-0401  IN RE STATE OF TEXAS; from Travis County; 14th Court of Appeals
        District; (14-20-00358-CV, ___ SW3d ___, 05-14-20)
        relator's emergency motion for temporary relief granted
        stay order issued

      [**Note:** The petition for writ of mandamus remains pending before this Court.]

EXHIBIT 6

| From: | TXW_USDC_Notice@txwd.uscourts.gov |
|---|---|
| To: | cmecf_notices@txwd.uscourts.gov |
| Subject: | Activity in Case 5:20-cv-00438-FB Texas Democratic Party et al v. Abbott, Governor of Texas et al Order on Motion for Preliminary Injunction |
| Date: | Tuesday, May 19, 2020 4:35:25 PM |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court [LIVE]

### Western District of Texas

## Notice of Electronic Filing

The following transaction was entered on 5/19/2020 at 4:34 PM CDT and filed on 5/19/2020

**Case Name:**     Texas Democratic Party et al v. Abbott, Governor of Texas et al

**Case Number:**     5:20-cv-00438-FB

**Filer:**

**Document Number:** 90

**Docket Text:**
**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [10] Motion for Preliminary Injunction. IT IS FURTHER ORDERED that this Order shall remain in full force and effect until a Judgment is issued in this matter or until such time as the pandemic circumstances giving rise to this Order subside. IT IS FINALLY ORDERED that defendants may petition this Court, upon giving notice and opportunity to be heard to plaintiffs, that the Order should be dissolved for any reason, including that the state courts have resolved issues of a matter of state law that render this injunction unnecessary or because the pandemic circumstances giving rise to it have subsided. Signed by Judge Fred Biery. (wg)**

**5:20-cv-00438-FB Notice has been electronically mailed to:**

Andrew M. Williams    drew.williams@traviscountytx.gov, destany.brown@traviscountytx.gov, hannah.lowrance@traviscountytx.gov, sara.boltin@traviscountytx.gov

Andy Taylor    ataylor@andytaylorlaw.com

Anne Marie Mackin    anna.mackin@oag.texas.gov, ana.aranda@oag.texas.gov

Chad W. Dunn    chad@brazilanddunn.com, gwen@brazilanddunn.com,
scott@brazilanddunn.com

Cory A. Scanlon    cory.scanlon@oag.texas.gov, caroline.taylor@oag.texas.gov,
laura.kiick@oag.texas.gov

Cynthia W. Veidt    cynthia.veidt@traviscountytx.gov, hannah.lowrance@traviscountytx.gov,
sara.boltin@traviscountytx.gov

Dallin B. Holt    dholt@hvjt.law

Jose Garza    jgarza@trla.org, garzpalm@aol.com

K. Scott Brazil    scott@brazilanddunn.com, carol@brazilanddunn.com,
chad@brazilanddunn.com

Leslie W. Dippel    leslie.dippel@traviscountytx.gov, amy.murray@traviscountytx.gov,
amy.pollock@traviscountytx.gov

Luis Roberto Vera , Jr    lrvlaw@sbcglobal.net, lrvlawsa@yahoo.com

Martin Anthony Golando    martin.golando@gmail.com

Michael Abrams    michael.abrams@oag.texas.gov, katrina.shanks@oag.texas.gov,
Laura.Redd@oag.texas.gov

Richard Alan Grigg    dicky@grigg-law.com, mel@grigg-law.com

Robert D. Green    robert.green@bexar.org, MaryAnn.Ortegon@bexar.org

Robert Leslie Meyerhoff    rmeyerhoff@txdemocrats.org

Sharon Talley    sharon.talley@traviscountytx.gov, julia.montemayor@traviscountytx.gov,
tim.labadie@traviscountytx.gov

Sherine Elizabeth Thomas    sherine.thomas@traviscountytx.gov,
amy.murray@traviscountytx.gov, gina.hernandez@traviscountytx.gov

Susan L. Hays    hayslaw@me.com

**5:20-cv-00438-FB Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1080075687 [Date=5/19/2020] [FileNumber=23393659-0] [0bf4fc4e41f6d054f5fd4848cc1aa1715a393c2d2f021863335b531221bdeb77c3
d56b57f941e31a5293c56d43a9bd9a963c008f842e1c03f0737649fb23c7b0]]

# EXHIBIT 7

| | |
|---|---|
| From: | cmecf_caseprocessing@ca5.uscourts.gov |
| To: | Abrams, Michael |
| Subject: | 20-50407 Texas Democratic Party, et al v. Greg Abbott, Governor of TX, et al "Motion Filed on Behalf of Party stay pending appeal" |
| Date: | Wednesday, May 20, 2020 10:57:25 AM |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

United States Court of Appeals for the Fifth Circuit

Notice of Docket Activity

The following transaction was entered on 05/20/2020 at 10:56:47 AM CDT and filed on 05/20/2020
Case Name:    Texas Democratic Party, et al v. Greg Abbott, Governor of TX, et al
Case Number:    20-50407
Document(s): https://urldefense.proofpoint.com/v2/url?u=https-3A__ecf.ca5.uscourts.gov_docs1_00505422958-3Fuid-3D679b751064223e8a&d=DwICaQ&c=Z_mC1sqOcfBCM1ZptXoOj7_ss37GsaAMzCZyvOxKN4&r=MxYvaQcKXssiOXeNNhlBRoYG2jIIMEOTe7v8RPrMov4&m=mznXzbBt1buiZillXRH325GOuAGggmJO1UxTXwIHgdw&s=fMgYZc-LAOX1_tSqaMLDeMjG3ii3ScQgANC5ViA_xI&e=

Docket Text:
MOTION filed by Appellants Greg Abbott, Governor of the State of Texas, Ms. Ruth Hughs and Mr. Ken Paxton for stay pending appeal [9317036-2] Ruling is requested by: 05/20/2020. Date of service: 05/20/2020 via email - Attorney for Appellants: Abrams, Hawkins; Attorney for Appellee: Brazil [20-50407] (Kyle Douglas Hawkins )

Notice will be electronically mailed to:

Mr. Kembel Scott Brazil: scott@brazilanddunn.com, duncha@sbcglobal.net, cyndiwoodfin@sbcglobal.net, Karen_Nix@sbcglobal.net
Mr. Kyle Douglas Hawkins: kyle.hawkins@oag.texas.gov, sabrina.wycoff@oag.texas.gov, maria.williamson@oag.texas.gov
Mr. Michael Abrams: michael.abrams@oag.texas.gov, katrina.shanks@oag.texas.gov, laura.redd@oag.texas.gov

The following document(s) are associated with this transaction:
Document Description:    Motion Filed on Behalf of Party
Original Filename:    Fifth Circuit Stay FINAL.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1105048708 [Date=05/20/2020] [FileNumber=9317036-0] [7729b40dc10f8538a4ee2969bae35ced0a58fec0b1acb0dc99786ede8c5bfaaf363e5923d6b6e1b9ceecf0bbd3d48124b6e7225f083a0a35d29df282ba2b3c72]]
Document Description:    Describe Attachment
Original Filename:    Fifth Circuit Stay Exhibits.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1105048708 [Date=05/20/2020] [FileNumber=9317036-1] [4033cd7a22071b34382a95f849e80f19efa63cb92b6e764cd51f8e7376e2eca70e41ed59ec9756c87e51e87ad6a8cbeb14dc3d737a75061e1db3a2817b517812]]